# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                   NEWS RELEASE #063

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of December, 2015**, are as follows:

**BY HUGHES, J.**:

2014-C -2225     WILLIAM HENRY SHANE v. THE PARISH OF JEFFERSON, STATE OF LOUISIANA, AND THE JEFFERSON PARISH ECONOMIC DEVELOPMENT COMMISSION (Parish of Jefferson)

Retired Judge Hillary J. Crain, assigned as Justice ad hoc, sitting for Justice Greg G. Guidry, recused.

Accordingly, we reverse the appellate court decision, and we reinstate the district court decision.  We remand this matter to the district court for further proceedings consistent with the foregoing.
REVERSED AND REMANDED.

JOHNSON, C.J. additionally concurs and assigns reasons.
KNOLL, J., additionally concurs for reasons assigned by C. J. Johnson
CRICHTON, J. additionally concurs for reasons assigned by C. J. Johnson
GUIDRY, J., recused.

12/08/15

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-2225

## WILLIAM HENRY SHANE

## VERSUS

## THE PARISH OF JEFFERSON, STATE OF LOUISIANA, AND THE JEFFERSON PARISH ECONOMIC DEVELOPMENT COMMISSION

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIFTH CIRCUIT, PARISH OF JEFFERSON

**HUGHES, J.***

This case presents the issue of whether the email communications of an employee of a public agency, via the public agency's email system, on private political matters with private individuals, are subject to disclosure under Louisiana's Public Records Law, LSA-R.S. 44:1 et seq., when those emails have been referenced in audits of the public agency. Upon a balancing of the public and private interests discussed hereinafter, we conclude that constitutional rights of privacy and association asserted by the plaintiff/private email correspondent are adequately protected by the release of the emails with redaction of all references to the private individuals, as ordered by the district court. Therefore, we reverse the appellate court decision and reinstate the district court decision.

*Retired Judge Hillary J. Crain, assigned as Justice ad hoc, sitting for Justice Greg G. Guidry, recused.

## FACTS AND PROCEDURAL HISTORY

William Henry Shane, a private citizen, exchanged emails related to political matters in 2010 with Lucien Gunter, who was then the Executive Director of the Jefferson Parish Economic Development Commission ("JEDCO").[1]  Both men were also members of two private nonprofit organizations, the Jefferson Business Council ("JBC") and the Committee for a Better Jefferson ("CBJ"), which were organizations comprised of local businesspersons who sought to improve the economic well-being and quality of life in Jefferson Parish.  In addition, Mr. Gunter and Mr. Shane were members of the Jefferson Community Foundation ("JCF"), a public charity administering donations for the educational, cultural, and charitable benefit of Jefferson Parish citizens.  The emails at issue were exchanged, during 2010, between Mr. Gunter (via his JEDCO email address), Mr. Shane, and other members of these organizations.

In June of 2012, the results of an audit on JEDCO operations were released by outside auditing company Postlethwaite & Netterville, which noted that there had been some "de minimis use" of JEDCO's email systems by "certain JEDCO employees" to engage in "political campaign activities" during 2010.

Thereafter, the results of an internal audit were released by Jefferson Parish auditor Tommy Fikes, in August of 2012, which also addressed Mr. Gunter's use of his JEDCO email for private purposes, along with other alleged improprieties related to Mr. Gunter's employment as JEDCO's Executive Director.  Mr. Fikes' report noted the fact that the Postlethwaite & Netterville audit report referenced de minimis use of JEDCO's email system for political activities; however, the Fikes

---

[1] JEDCO was created by LSA-R.S. 34:2021(A) as a "special parish district," originally designated as the "Jefferson Parish Economic Development and Port District," having the power "to acquire, construct, improve, maintain, and operate projects" and "to provide such additional parish services within the district as may be required by the Jefferson Parish Council."  JEDCO was further declared to be "a body politic and political subdivision of the state of Louisiana" by LSA-R.S. 34:2021(A).

report focused on Mr. Gunter's "significant political activity related to the 2010 Jefferson Parish School Board Election" and concluded that the use of Mr. Gunter's "public time" for his political activity should be reviewed by the JEDCO Board of Commissioners for any violation of the Louisiana Code of Ethics, particularly LSA-R.S. 42:1116(B).[2]

Subsequently, on October 26, 2012, The Times-Picayune reporter Drew Broach transmitted a public records request, via email, to JEDCO seeking to inspect the following:

(1) All "political" emails that were so deemed during or as a result of JEDCO's annual audit for 2011. This should include emails composed and sent in 2010.

(2) All correspondence between JEDCO and the Jefferson Parish attorney's office, or other attorneys, relating to the JEDCO executive director's residency requirement.

Thereafter, on November 8, 2012, Mr. Broach submitted a "revised and restated" public records request to JEDCO, requesting release of the following:

all emails that were referenced by Postlethwaite & Netterville

---

[2] Mr. Fikes' report also pointed out the following additional irregularities related to Mr. Gunter's JEDCO employment: (1) although JEDCO's executive director is required by Jefferson Parish ordinance to be a resident of Jefferson Parish, Mr. Gunter's proof of residence was a lease agreement on a local apartment, and he had admitted that he had obtained the lease to satisfy the residency requirement, that he had not spent any nights in the apartment, and that he lived with his wife in their St. Tammany Parish home (on which he had a homestead exemption and where he was registered to vote); (2) although Jefferson Parish policy provided only for reimbursement of out-of-town travel-related meals and JEDCO had no specific policy allowing for the reimbursement of in-town meals for employees or their guests, Mr. Gunter had been reimbursed by JEDCO for in-town meals for himself and his guests, from January 1, 2010 through May 31, 2012, in the amount of $11,041.10, and Mr. Gunter had set up a charge account at Andrea's Restaurant in JEDCO's name to charge meals there; (3) although JEDCO had no policy relative to car allowances and a car allowance received by a Jefferson Parish employee ordinarily covered mileage, parking, tolls, insurance, and maintenance on the use of a personal vehicle, Mr. Gunter received a $750 monthly car allowance and obtained additional reimbursements from JEDCO for mileage, parking, and tolls, from January 2010 through May 2012, totaling $1,211.53; also, Mr. Gunter obtained his monthly car allowance from JEDCO, via reimbursement request, when the car allowance amounts should have been reported on his W-2 forms as additional income; (4) although the bills of other executive employees, who were provided cellular phones by JEDCO, were paid by JEDCO directly to the cellular provider, Mr. Gunter received reimbursement for his personal cellular phone bills, at his "base" monthly rate of $80 for a "family talk" plan, under which two of his family members also had cellular service at a rate of $9.99 per month (for which no reimbursement was sought), and all three of the Gunter family phones shared the available minutes on the plan; and (5) Mr. Gunter's December 15, 2009 pay increase was not properly documented, in the auditor's opinion, since it was approved via unsigned emails, rather than by original signed documents.

3

professional accounting corporation on Page 51 of the JEDCO's Financial Statements and Schedules for the year ending Dec. 31, 2011, said report bearing a release date of June 6, 2012. I specifically refer to this language from said report: "During the course of our audit procedures for the year ended December 31, 2011, we were made aware of certain JEDCO employees that were engaged in political campaign activities during the year ended December 31, 2010. We observed de minim[is] use of JEDCO's email system to engage in these activities."

JEDCO's then-public records custodian, Cynthia Grows, denied the public records request, stating that the emails at issue were not subject to disclosure because they were "purely personal in nature" and had "no relation to the public business of JEDCO," and, even if considered public records, they were exempted from disclosure under LSA-Const. Art. I, Sec. 5's right to privacy.

Mr. Broach again modified his public records request, on November 21, 2012, to ask that the emails be released after redaction to mask the identities of senders or recipients who were not JEDCO employees. Ms. Grows again denied the request "for the same reasons given" in her earlier denial.

On December 20, 2012, The Times-Picayune and Drew Broach submitted a public records request to Jefferson Parish, seeking release of the emails previously sought in the November 8, 2012 public records request submitted to JEDCO. Jefferson Parish (having obtained the emails for purposes of the internal audit by Mr. Fikes) concluded that the emails were public records and announced its intent to make the records available for public inspection on February 1, 2013.

Mr. Shane then filed suit for declaratory and injunctive relief, on February 1, 2013, against Jefferson Parish and JEDCO, seeking to prevent the disclosure of the email correspondence with Mr. Gunter, asserting a right of privacy under LSA-Const. Art. I, Sec. 5 ("Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."). A temporary restraining order was immediately issued by the district court, enjoining the defendants from "permitting

4

inspection and/or copying of any and all emails between [Mr. Shane] and any other members of [JBC, CBJ, and/or JCF], including but not limited to Lucien Gunter, by The Times-Picayune and/or The Advocate."

Jefferson Parish responded, admitting that it did announce its intent to make the emails available to the requesting parties and further alleging that "JEDCO employees were aware that they were using government time, talent and resources to further their political activities, and thus had no expectation of privacy."

JEDCO responded, stating that the plaintiff was "entitled to an injunction against the Parish of Jefferson." JEDCO further alleged that its current public records custodian, Dottie Stephenson, concurred in the prior denial of the media's public records request by its prior public records custodian, Cynthia Grows. JEDCO also asserted that the media's sole remedy, upon denial of its request, was, pursuant to LSA-R.S. 44:35, to institute suit against its custodian for the issuance of a writ of mandamus or for injunctive or declaratory relief.[3] JEDCO alleged that the media failed to avail themselves of the sole remedy available under LSA-R.S. 44:35 and, instead, "attempted to circumvent the custodian (JEDCO) and made a public records request on Jefferson Parish, who is not the custodian of the electronic correspondence in question." JEDCO alleged that its designated records custodian (previously, Ms. Grows; currently, Ms. Stephenson) was the only person authorized to release the emails at issue under the Public Records Law.

An intervention was filed by The Times-Picayune, L.L.C. and Drew Broach (hereinafter, "media-intervenors") to assert the public's right of access and to oppose the plaintiff's request for an injunction. In his answer and affirmative defenses to the intervention, Mr. Shane further alleged that release of the emails

---

[3] See LSA-R.S. 44:35(B) ("[T]he court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the custodian to sustain his action.").

5

would violate LSA-Const. Art. I, Sec. 7 ("No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.") and LSA-Const. Art. I, Sec. 9 ("No law shall impair the right of any person to assemble peaceably or to petition government for a redress of grievances.").

Judgment was thereafter rendered by the district court, on March 1, 2013, granting Mr. Shane's request for injunctive relief, in part. Because the emails had been used by JEDCO's external auditor and by Jefferson Parish's internal auditor, in reviewing the business affairs of JEDCO, the district court concluded that the emails were public records. However, the district court further reasoned that, since Mr. Shane was entitled to assert constitutional rights of privacy and association, as a private citizen, relative to the emails, a balancing of the various interests required that the emails should be redacted prior to release as public records. The district court ordered Jefferson Parish to redact the emails requested in the media's public records request and then to allow inspection. Further, the district court ruled that the redaction should include the identities of all persons reasonably believed to have been private citizens, and not public employees, at the time the emails were written. The redactions, as to the private citizens, were to include names, addresses, email addresses, phone numbers, and places of employment, within the sender, recipient, address, and body sections of the emails, as well as within any attachments to the emails. The names of the employees of JEDCO, elected officials, and political candidates, who had qualified for the office, were not ordered redacted.

The appellate court reversed the district court decision and granted the plaintiff injunctive relief. See **Shane v. Parish of Jefferson**, 13-0590 (La. App. 5 Cir. 9/24/14), 150 So.3d 406. In so ruling, the appellate court held that, based on the facts in this case, the emails in question were "purely" private and not subject

to the Public Records Law.

The media-intervenors sought review of the appellate court decision, and this court granted a writ of certiorari. See **Shane v. Parish of Jefferson**, 14-2225 (La. 2/6/15), 157 So.3d 1137.

## LAW AND ANALYSIS

Standing of Plaintiff and JEDCO

As an initial matter, we address the media-intervenors' contention that "Shane and JEDCO lack standing to challenge whether Jefferson Parish is a custodian of Gunter's emails . . . ."

Louisiana Code of Civil Procedure Article 1872 states:

> *A person* interested under a deed, will, written contract or other writing constituting a contract, or *whose rights, status, or other legal relations are affected by a statute*, municipal ordinance, contract or franchise, *may have determined any question of construction* or validity *arising under the* instrument, *statute*, ordinance, contract, or franchise *and obtain a declaration of rights, status, or other legal relations thereunder*. [Emphasis added.]

Clearly, LSA-C.C.P. art. 1872 provides a cause of action to a person affected by a statute for a court to determine what construction is to be applied to the statute and the person's rights under the statute, when there is a present, justiciable controversy. See **Church Point Wholesale Beverage Co. v. Tarver**, 614 So. 2d 697, 701 (La. 1993).

Because Mr. Shane is a "person" "whose rights . . . are affected by a statute" (i.e., LSA-R.S. 44:1(A)(2)(a)'s definition of a "public record"), he is entitled to "have determined any question of construction . . . arising under the . . . statute" (i.e., Jefferson Parish's determination that the emails are public records subject to disclosure under the Public Records Law, LSA-R.S. 44:1 et seq.) and to "obtain a declaration of rights, status, or other legal relations thereunder."

Mr. Shane alleged that the emails at issue involved private political matters and were sent between himself, Mr. Gunter, and members of private associations to

7

which they belonged. Mr. Shane further alleged that he was entitled to declaratory relief, ruling that the emails are not public records, that Jefferson Parish is not a custodian of the emails, and that because of his rights of privacy and association the emails are exempt from disclosure under the Public Records Law.

We find no merit in the media-intervenors' contention that Mr. Shane lacks standing to challenge Jefferson Parish's determination that the emails are public records. Further, the media-intervenors' contention is inappropriately applied to JEDCO, since JEDCO is merely a defendant in this case, not a petitioner.

Motion to Strike

The plaintiff has also filed with this court a motion to strike the relators/media-intervenors' April 2, 2015 reply brief, contending that a "reply" brief was not authorized either by leave of this court or by this court's rules, citing La. Sup. Ct. Rules, Rule VII, § 11.1, which provides that "[s]upplemental briefs on the merits, or briefs in support of or in opposition to motions, may be filed at any time. However, a brief filed without leave after the matter is argued or submitted may not be considered." The plaintiff asserts that "supplemental" briefs should be directed to only the citation of supplemental authorities and were not intended to include "reply" briefs containing only rebuttal arguments, as submitted by relators herein.

We find no merit in the plaintiff's interpretation of this court's rules. See La. Sup. Ct. Rules, Rule VII, § 11.2 (directing that "[if] pertinent and significant authorities come to a party's attention after all original and *reply briefs* have been filed - or after oral argument but before decision - a party may promptly advise the clerk by letter . . . ." (emphasis added)). The filing of a reply brief was intended to be included within the purview of "[s]upplemental briefs on the merits," as stated in this court's Rule VII, § 11.1.

8

Louisiana Public Records Law

No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.  LSA-Const. Art. XII, Sec. 3.

The legislature, by enacting the "Public Records Law" (LSA-R.S. 44:1 et seq.), sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public.  There was no intent on the part of the legislature to qualify, in any way, the right of access.  See **Landis v. Moreau**, 00-1157 (La. 2/21/01), 779 So.2d 691, 694-95.

The legislature has recognized that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records.  LSA-R.S. 44:4.1(A).  In order to foster the people's awareness, the legislature declared that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in the Public Records Law or the Constitution of Louisiana.  **Id.**  Any exception, exemption, and limitation to the laws pertaining to public records not provided for in the Public Records Law or in the Constitution of Louisiana has no effect.  **Id.**  Thus, access to public records can be denied only when the Public Records Law or the Constitution specifically and unequivocally provide otherwise.  See **DeSalvo v. State**, 624 So.2d 897, 902 (La. 1993), cert. denied, 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994).

As with Article XII, Section 3, the Public Records Law should be construed liberally in favor of free and unrestricted access to public documents.  **Landis v. Moreau**, 779 So.2d at 695; **Title Research Corporation v. Rausch**, 450 So.2d 933, 937 (La. 1984).  Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the

public's right to see; to allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights. **In re Matter Under Investigation**, 07-1853 (La. 7/1/09), 15 So.3d 972, 989; **Capital City Press v. East Baton Rouge Parish Metropolitan Council**, 96-1979 (La. 7/1/97), 696 So.2d 562, 564; **Title Research Corporation v. Rausch**, 450 So.2d at 936.

Any person of the age of majority may inspect, copy, or reproduce any public record or may obtain a copy or reproduction of any "public record" in accordance with the provisions of the Public Records Law, except as otherwise provided by law. See LSA-R.S. 44:31(B). Pursuant to LSA-R.S. 44:1(A)(2)(a), "public records" encompass, "except as otherwise provided in [the Public Records Law] or the Constitution of Louisiana," the following:

> All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body[4] or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state . . . .

This definition expressly includes all "letters . . . regardless of physical form . . . , including information contained in electronic data processing equipment," which are "used . . . in the . . . performance of any . . . work, duty, or function . . . performed by or under the authority of the . . . laws of this state . . . or order of any public body." Clearly "electronic mail," or "email," falls within the definition of

---

[4] The phrase "public body" means "any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function, or an affiliate of a housing authority." LSA-R.S. 44:1(A)(1).

"letters,"[5] despite generally lacking a physical form and though usually stored in an electronic format, and, if used in the performance of any work, duty, or function of a public body, under the authority of state or local law, should be deemed a "public record."

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. See also LSA-R.S. 1:4. It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. **Guillory v. Pelican Real Estate, Inc.**, 14-1539 (La. 3/17/15), 165 So.3d 875, 877 (per curiam); **Sultana Corporation v. Jewelers Mutual Insurance Company**, 03-0360 (La. 12/3/03), 860 So.2d 1112, 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. **Guillory v. Pelican Real Estate, Inc.**, 165 So.3d at 877; **Watkins v. Exxon Mobil Corporation**, 13-1545 (La. 5/7/14), 145 So.3d 237, 243. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. **Watkins v. Exxon Mobil Corporation**, 145 So.3d at 243. Finally, it is presumed that the legislature acts with full knowledge of well-settled principles of statutory construction. **Id.**; **Sultana Corporation v. Jewelers Mutual Insurance Company**, 860 So.2d at 1119.

Louisiana's Public Records Law contains a broad definition of "public

---

[5] See LSA-R.S. 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language . . . ."). "Letter" is defined as: "A dispatch or epistle; a written or printed message; a communication in writing from one person to another at a distance . . . ." Black's Law Dictionary 813 (5th ed. 1979).

records." **Copeland v. Copeland**, 07-0177 (La. 10/16/07), 966 So.2d 1040, 1043.[6]

Application of this broad definition to the facts of the instant case, produces the result adopted by the district court on the issue of the inclusiveness of the term "public records." With respect to JEDCO, the emails at issue were used in its regular business, transactions, work, duties, or functions, since the emails were used in the performance of the external audit of JEDCO's operations by Postlethwaite & Netterville. With respect to Jefferson Parish, the emails were used in its Jefferson Parish Council-ordered audit of JEDCO, performed by internal auditor Tommy Fikes. Thus, the district court concluded, resolving all doubt in favor of the public's right to see, that the emails were public records, while the appellate court concluded that the emails were "purely" private communications and did not fall within the definition of "public records."

Our review of the Public Records Law, particularly the definition of "public records," the laws specifically applicable to JEDCO, and the evidence submitted in this matter, lead us to conclude that the district court was correct in determining that the use of these emails in the Postlethwaite & Netterville and the Jefferson Parish audits resulted in the emails falling within the definition of "public records," as defined in 44:1(A)(2)(a).

Pursuant to LSA-R.S. 34:2023, JEDCO is entitled to "exercise all powers of a political subdivision necessary or convenient for the carrying out of its objects and purposes . . . ." Further, JEDCO is expressly authorized, by LSA-R.S.

---

[6] This court has previously noted that a literal reading of the definition of "public records" would expose "virtually all of this Court's papers, including law clerk memoranda, draft opinions, and the most sensitive of our internal documents to public inspection." See **Bester v. Louisiana Supreme Court Committee on Bar Admissions**, 00-1360 (La. 2/21/01), 779 So.2d 715, 719 n.2 (wherein we recognized that "an additional, limited exception to public disclosure exists for documents we determine should remain confidential, in situations where we are exercising our inherent authority as the head of a separate and independent branch of state government," since "[i]n exercising its sovereign rulemaking authority, a state supreme court occupies the same position as that of the state legislature . . . . Thus, when we exercise our inherent rulemaking authority regarding bar admissions, we occupy a position not unlike that of the Legislature, and our decisions concerning the disclosure or non-disclosure of documents within our exclusive purview falls within the 'except' provision of Article XII, § 3 of the Constitution.").

34:2022(B), to "contract for . . . financial . . . and other professional services necessary or expedient in the conduct of its affairs." Moreover, JEDCO is required by LSA-R.S. 34:2032(B) ("The financial records of the district shall be audited pursuant to R.S. 24:513.") to obtain an audit of its financial records.

As stated in the June 6, 2012 Postlethwaite & Netterville audit report, the financial report issued in conjunction with the audit "is designed to provide taxpayers, customers, and creditors with a general overview of JEDCO's finances and to show JEDCO's accountability for the money it receives." In addition, the Postlethwaite & Netterville report stated: "As part of obtaining reasonable assurance about whether JEDCO's financial statements are free of material misstatement, we performed tests of its compliance with certain provisions of laws, regulations, contracts and grant agreements, noncompliance with which could have a direct and material effect on the determination of financial statement amounts." The report further stated: "We noted certain matters that we reported to management of JEDCO . . . identified in our audit [and] described in the accompanying schedule of findings and questioned costs." The emails at issue in the instant case were listed in the Postlethwaite & Netterville audit report, in the "Schedule of Findings and Questioned Costs," under Item (2), "Findings Relating to the Financial Statement Reported in accordance with *Government Auditing Standard*," stating in pertinent part:

> *Condition*: During the course of our audit procedures for the year ended December 31, 2011, we were made aware of certain JEDCO employees that were engaged in political campaign activities during the year ended December 31, 2010. We observed the de minimis use of JEDCO's email system to engage in these activities.
>
> *Criteria*: Louisiana R.S. 18:1465[7] provides that no public funds shall

---

[7] Louisiana Revised Statute 18:1465 provides:

> A. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an

be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization.

*Effect*:   JEDCO is not in compliance with the requirements as described in Louisiana R.S. 18:1465.

*Cause*:  JEDCO employees were not aware that the de minimis use of email as described above was not in compliance with Louisiana R.S. 18:1465.

*Recommendation*:  We recommend that the Board review its policies and procedures with regard to political activities of employees and make changes as needed to the policies and procedures.

The Jefferson Parish internal audit of JEDCO was authorized by Resolution No. 117985, passed by the Jefferson Parish Council, on December 7, 2011, stating, in pertinent part:[8]

> . . . [T]his Council hereby requests the Internal Auditor to audit in 2012 all agencies which do not fall under the jurisdiction of the Jefferson Parish government but which regularly receive funds from Jefferson Parish, to ascertain whether or not such funds are being used as intended and in accordance with applicable parish and state laws.
> . . . [T]he audits requested should include, but not be limited to, reviews of credit card usage, payroll and payments to third parties.
> . . . [T]he agencies to be reviewed in accordance with this request include . . . JEDCO . . . .

In the Jefferson Parish internal audit report, the following was stated in a section entitled "**Executive Director's Political Activity**":

> **FINDING**: Postlethwaite & Netterville, in their JEDCO financial statement audit for the year ended December 31, 2011 also noted that "certain JEDCO employees . . . were engaged in political campaign activities during the year ended December 31, 2010." P&N noted "de minimis" use of JEDCO's email system to engage in these activities.
>
> Internal Audit noted in the documentation provided that the Executive Director was involved in significant political activity related to the

---

election ballot.

B. Whoever violates any provision of this Section shall be fined not more than one thousand dollars or be imprisoned, with or without hard labor, for not more than two years, or both.

[8] The Jefferson Parish Council was given control over, and responsibility for, the functions, management, affairs, operation, and administration of JEDCO and the right to exercise such powers as are necessary to govern such functions, management, affairs, operation, and administration, by LSA-R.S. 34:2021(B).

14

2010 Jefferson Parish School Board Election. His political activities included use of his position as Executive Director to organize the solicitation of fundraising for candidates, endorse specific candidates, and direct distribution of funds to candidates. It appears that he spent a significant amount of public time in this political activity. He also utilized the resources of his Executive Assistant in this political activity.

**RECOMMENDATION**: The Louisiana Code of Governmental Ethics, under R.S. 42:1116(B) states "No public servant shall use the authority of his office or position[,] directly or indirectly, in a manner intended to compel or coerce any person or other public servant to engage in political activity. For the purposes of this Subsection, political activity means an effort to support or oppose the election of a candidate for political office in an election. This Subsection shall not be construed to limit the authority authorized by law, statute, ordinance, or legislative rule in carrying out official duties."

The JEDCO Board of Commissioners should review the above finding and determine if the Executive Director violated this code and take action as deemed appropriate. This issue also should possibly be presented to the Louisiana Board of Ethics for an opinion.

Because the hiring of, and providing records to, Postlethwaite & Netterville by JEDCO was in compliance with state law (see LSA-R.S. 34:2022(B); LSA-R.S. 34:2023), which mandated the audit (see LSA-R.S. 34:2032(B)), the materials used in the Postlethwaite & Netterville audit, including the emails at issue herein, were used as a part of JEDCO's business, work, duties, or functions, which were conducted, transacted, or performed "by or under the authority of the . . . laws of this state . . . ." Further, since the Jefferson Parish internal audit was conducted pursuant to Jefferson Parish Council Resolution No. 117985 (12/7/11), under its authority to "control . . . the functions, management, affairs, operation, and administration of JEDCO" pursuant to state law (see LSA-R.S. 34:2021(B)), and included the use of the emails at issue herein, the emails were used as a part of the Jefferson Parish government's work, duties, or functions, which were conducted, transacted, or performed "by or under the authority of the . . . laws of this state . . . or order of any public body . . . ."[9] Therefore, we agree with the district court that

---

[9] See also LSA-R.S. 44:4(6) ("This Chapter [the Public Records Law] shall not apply . . . [t]o any records, writings, accounts, letters, letter books, photographs, or copies or memoranda

the definition of "public records," contained in LSA-R.S. 44:1(A)(2)(a) of the Public Records Law, clearly and unambiguously encompasses the emails at issue in this case, and the law should be applied as written.

However, the plaintiff argued, and the appellate court agreed, that the use of private email correspondence by a public entity should not turn the private communication into a public record. On this point, the appellate court held that "the determination of a public record is based on a content-driven analysis. Here, the content of the e-mails had nothing to do with the business of JEDCO and are not public records." See **Shane v. Parish of Jefferson**, 150 So.3d at 414. In this statement of the law, the appellate court erred.

"Content" is not an element of the definition of "public records" set forth in LSA-R.S. 44:1(A)(2)(a). In order to be a "public record," pursuant to LSA-R.S. 44:1(A)(2)(a), the items listed therein need only have been "used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state." "Content" only becomes relevant *after* an item, listed in LSA-R.S. 44:1(A)(2)(a) and sought to be inspected as a public record, has been determined to meet the definition of "public record" and *if* the issue is raised as to whether an exception, exemption, or limitation, under the Louisiana Constitution or in the Public Records Law (see LSA-R.S. 44:4.1(A)), supersedes the right of the public to inspect the record. We reverse the appellate court decision insofar as it held that

thereof in the custody or control of the legislative auditor, or to the actual working papers of the internal auditor of a municipality until the audit is complete, unless otherwise provided.").

16

"the determination of a public record is based on a content-driven analysis."

Moreover, the assertion that the use of private email correspondence by a public entity should not turn the private communication into a public record overlooks the fact that public entities must regularly use private information in the entities' performance of their business, transactions, work, duties, or functions (e.g., the Department of Revenue uses taxpayers' private financial data; the Department of Education, colleges, and local school boards use private student data; the Department of Children and Family Services must utilize private family information; the Department of Health and Hospitals and local health units use private patient medical records; etc.). Obviously, the legislature anticipated that the records of private individuals would often be used by public entities in the conduct of their respective business, work, duties, or functions, thus falling within the broad definition of "public records"; otherwise, it would have been unnecessary for the legislature to enact extensive statutory exceptions to the public's right to inspect "public records."[10] Hence, we must conclude that the use by a public entity of an individual's private information, data, or records may result in that information, data, or records becoming a public record; notwithstanding, such records may be subject to one of the many exceptions set forth either in the Louisiana Constitution or the Public Records Law. See LSA-R.S. 44:4.1 ("[T]he legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana . . . . The legislature further recognizes that there exist exceptions, exemptions, and limitations to the laws pertaining to public records throughout the revised statutes and codes of this state. Therefore, the following

---

[10] See LSA-R.S. 44:1(A)(2)(b), (B); LSA-R.S. 44:2; LSA-R.S. 44:3; LSA-R.S. 44:3.1; LSA-R.S. 44:3.2; LSA-R.S. 44:3.3; LSA-R.S. 44:4; LSA-R.S. 44:4.1(B), (C); LSA-R.S. 44:5; LSA-R.S. 44:10; LSA-R.S. 44:11; LSA-R.S. 44:12; LSA-R.S. 44:13; LSA-R.S. 44:15; LSA-R.S. 44:16; LSA-R.S. 44:17; LSA-R.S. 44:18; LSA-R.S. 44:19; LSA-R.S. 44:20; LSA-R.S. 44:21; LSA-R.S. 44:21.1; LSA-R.S. 44:22; LSA-R.S. 44:23; LSA-R.S. 44:23.1.

exceptions, exemptions, and limitations are hereby continued in effect by incorporation into this Chapter by citation . . . .").

Since the plaintiff herein asserted that both his constitutional rights of privacy and of association (pursuant to LSA-Const. Art. I, Sec. 5; LSA-Const. Art. I, Sec. 7; and LSA-Const. Art. I, Sec. 9) would be violated by the release of the email communications at issue, as the emails addressed only private political matters, the district court ultimately balanced the plaintiff's constitutional interests against the public's right to inspect public documents and concluded that all the identifying information of Mr. Gunter's private email correspondents should be redacted before release of the public records, citing **Angelo Iafrate Construction, L.L.C. v. State, Department of Transportation and Development**, 03-0892 (La. App. 1 Cir. 5/14/04), 879 So.2d 250, <u>writ denied</u>, 04-1442 (La. 9/24/04), 882 So.2d 1131 (wherein the redaction of the identifying information of the employees of a private company working on a public contract was found sufficient to protect the workers' rights when payroll information was sought under a public records request). The appellate court ruled that redaction would be insufficient to protect the plaintiff's privacy interests. We next examine the correctness of these rulings.

<u>Right of Privacy and Right of Association</u>

Article I, Section 5, of the Louisiana Constitution states: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."

The right to privacy in Louisiana has been described as the right to be "let alone" and to be free from unnecessary public scrutiny. **Capital City Press v. East Baton Rouge Parish Metropolitan Council**, 696 So.2d at 566; **DeSalvo v. State**, 624 So.2d at 901. The right of privacy protects varied interests from invasion; among the interests protected is the individual's right to be free from unreasonable intrusion into his seclusion, solitude, or into his private affairs.

**Capital City Press v. East Baton Rouge Parish Metropolitan Council**, 696 So.2d at 566.

However, the right to privacy, like other personal rights, may be lost in many ways, by express or implied waiver, consent, or by a course of conduct that prevents its assertion. **Id.** The right is not absolute; it is qualified by the rights of others. **Id.** The right of privacy is also limited by society's right to be informed about legitimate subjects of public interest (e.g., individuals involved in civil litigation may be compelled to give evidence, which tends to embarrass them or to produce documents of a confidential nature, and a debtor's right of privacy is subject to the creditor's right to take reasonable steps to collect his debt). **Copeland v. Copeland**, 966 So.2d at 1046; **Capital City Press v. East Baton Rouge Parish Metropolitan Council**, 696 So.2d at 566; **Plaquemines Parish Commission Council v. Delta Development Company, Inc.**, 472 So.2d 560, 567 (La. 1985).

Article I, Section 5, of the Constitution applies only where one has a reasonable expectation of privacy in the matter sought to be protected. The test for determining whether one has a reasonable expectation of privacy, which is constitutionally protected, is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type that society at large is prepared to recognize as being reasonable. **Capital City Press v. East Baton Rouge Parish Metropolitan Council**, 696 So.2d at 566.

The freedom of association protected by the First and Fourteenth Amendments of the U.S. Constitution is also guaranteed by Article I, Sections 7 and 9 of the Louisiana Constitution of 1974. **Louisiana Republican Party v. Foster**, 96-0314 (La. 5/21/96), 674 So.2d 225, 229. The fundamental right of freedom of association protected by these constitutional provisions includes the

right of persons to engage in partisan political organizations.[11] **Id.** Because the right of association would be hollow without a corollary right of self-governance, there must be a right not only to form political associations but to organize and direct them in the way that will make them most effective. **Id.** (citing **Eu v. San Francisco County Democratic Central Committee**, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989)).

It has long been recognized that the compelled disclosure of affiliation with groups engaged in advocacy may constitute a restraint on freedom of association; there is a vital relationship between freedom to associate and privacy in one's associations. See **National Association for Advancement of Colored People v. State of Alabama ex rel. Patterson**, 357 U.S. 449, 462, 78 S.Ct. 1163, 1171-72, 2 L.Ed.2d 1488 (1958). Inviolability of privacy in group association may in many circumstances be indispensable to the preservation of freedom of association, particularly where a group espouses dissident beliefs. **Id.**

A significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest; for even when pursuing a legitimate interest, a state may not choose means that unnecessarily restrict constitutionally protected liberty. **Kusper v. Pontikes**, 414 U.S. 51, 58-59, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973). If the state has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties. **Id.**

When competing constitutional interests are asserted, these interests must be balanced on a case by case basis. See **Copeland v. Copeland**, 966 So.2d at 1046-47; **Plaquemines Parish Commission Council v. Delta Development Company,**

---

[11] It is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious, or cultural matters; state action that may have the effect of curtailing the freedom to associate is subject to the closest scrutiny. **National Association for Advancement of Colored People v. State of Alabama ex rel. Patterson**, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958).

**Inc.**, 472 So.2d at 568; **Jaubert v. Crowley Post-Signal, Inc.**, 375 So.2d 1386, 1389 (La. 1979).

Mr. Shane has raised his constitutional rights of privacy and association in this suit to enjoin the release of email correspondence between himself and other members of the private associations named herein. Mr. Shane contends that the emails in question contain ideas, strategies, and opinions concerning political advocacy, among members of the private associations, which the associations' members intended to be private. Mr. Shane asserts that the disclosure of the association members' internal deliberations and planning would eliminate all associational privacy and have a chilling effect.

These rights must be balanced against the right of the public to inspect public records. The media-intervenors assert that the public has a right to know about the activity of public employees who are suspected of wrongdoing. In this case, the media-intervenors contend the emails evidence misuse of public office by former JEDCO Executive Director Lucien Gunter, who they alleged was engaging in unlawful political activity. Further, the media-intervenors assert that Mr. Gunter "sent and received emails on his official government email account intended to influence the 2010 Jefferson Parish School Board election," despite Louisiana law forbidding a public servant from "lending the imprimatur of his office 'to support or oppose the election of a candidate for political office,'" citing LSA-R.S. 18:1465 and LSA-R.S. 42:1116(B).

Although LSA-R.S. 18:1465 prohibits public funds being "used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization," no evidence was submitted at the hearing on this matter to establish that any public funds had been expended as a result of the de minimis email activity of JEDCO's employees, as referenced in the June 6, 2012 Postlethwaite & Netterville audit report. No JEDCO, Jefferson Parish, other

governmental employee, or auditor was called to testify, although the affidavits of two JEDCO employees were submitted into evidence.

In his affidavit, former JEDCO Executive Director Lucien Gunter stated that he was the executive director of JEDCO from December 2005 through December 2012, and, during that time, JEDCO never endorsed a candidate for public office or made political contributions. He was previously the executive director for the JBC, which is comprised of Jefferson Parish business executives and focuses on strategies for the economic growth of the parish. While JBC does not engage in endorsing or contributing to political candidates, Mr. Gunter stated that JBC does encourage its members to take an active role in the Jefferson Parish elective process. Mr. Gunter stated that he was also a member of the CBJ, a private association of business owners, which endorses candidates for public office and raises funds to publish its endorsements. Mr. Gunter stated that the emails at issue consisted only of private correspondence with his close friends, met through his more than twenty years of participation in the JBC or CBJ; and, the emails were in no way related to JEDCO business. Mr. Gunter averred that, during his tenure at JEDCO, there was no written policy prohibiting employees from using JEDCO email for private matters, and his policy was that private use was permissible so long as it was minimal and did not interfere with JEDCO responsibilities. Mr. Gunter further declared that at no time did he use "JEDCO dollars" for any political campaign expenditures.

The affidavit of Dottie Stephenson, Deputy Director of JEDCO, was also submitted into evidence. Ms. Stephenson stated that she was JEDCO's records custodian. Ms. Stephenson described JEDCO as an independent, but complimentary, arm of the Jefferson Parish government, having as its main objective the attraction, growth, and creation of new business opportunities in the parish, through the retention and creation of quality jobs, entrepreneurship, and

22

investment in the parish.  Ms. Stephenson further stated that in 2010, JEDCO did not have a written policy prohibiting the use by employees of JEDCO email accounts for personal or private business.  She also averred that JEDCO does not endorse, or make contributions to, political candidates or engage in political fundraising.

A 2009 JEDCO employee handbook was also submitted into evidence and, on the issue of agency communications systems use, stated in pertinent part:

**Personal Telephone Use**

It is important to keep our telephone lines free for client calls. Although the occasional use of JEDCO's telephones for a personal emergency may be necessary, routine personal calls are discouraged.

* * *

**Electronic Mail and Voice Mail Monitoring**

We recognize your need to be able to communicate efficiently with fellow employees and clients.  Therefore we have installed internal electronic mail (e-mail) and voice mail systems to facilitate the transmittal of business-related information within the organization and with our clients

The e-mail and voice mail systems are intended for business use only. The use of the organization's e-mail and/or voice mail systems to solicit fellow employees or distribute non job-related information to fellow employees is strictly prohibited.

* * *

For business purposes, management reserves the right to enter, search and/or monitor the organization's private e-mail and voice mail systems and the files/transmission of any employee without advance notice and consistent with applicable state and federal laws. ***Employees should expect that communications that they send and receive by the organization's private e-mail*** and voice mail systems ***will be disclosed to management***. ***Employees should not assume that communications that they send and receive by JEDCO's private e-mail and voice mail systems are private or confidential***.  [Emphasis added.]

Based on this written policy, JEDCO employees were informed that private use of JEDCO's email system was limited; however, there was no express statement within the JEDCO employee handbook that *all* private use was

23

*prohibited*. Further, even though the handbook language informed employees that email could be reviewed by JEDCO "management," there was no indication that email would be subject to outside or public inspection.

JEDCO Board of Commissioners Chairman James Garvey's written response to the Jefferson Parish audit report was admitted into evidence. In that response, Mr. Garvey stated that "given the fact that JEDCO receives anywhere from 175,000 to 200,000 emails per year, the email activity that occurred should be considered to be *de minimis*." Mr. Garvey also stated that Mr. Gunter's participation in the email correspondence was "as a 'private citizen' and/or as an advisor to several private business entities and coalitions that had formed to push for school board reforms and not from the position or authority of his office (i.e., his position as JEDCO Executive Director)." Mr. Garvey further indicated that, with respect to Mr. Gunter's administrative assistant, Mr. Gunter did ask her to read or draft responses to his private email "on occasion," believing that her performing "a *de minimis* amount of personal activities would not be a problem," and Mr. Gunter did not "coerce or threaten" his administrative assistant to perform the work or to become actively involved in any political campaign.

This court has conducted an in camera inspection of the specified emails, which were submitted into evidence in the district court as a sealed exhibit. Of the 104 emails in evidence, sent via the JEDCO email system between June 21, 2010 and October 12, 2010, 53 were sent by JEDCO employees: 46 emails were sent by Lucien Gunter, including several emails to Penny Weeks, Mr. Gunter's administrative assistant, asking her to print out attached documents, and the remainder to his private association co-members; 5 emails were sent by Ms. Weeks to forward Mr. Gunter's emails to others; and 2 emails were sent by JEDCO marketing employees to forward newspaper articles to Mr. Gunter. The remaining 51 emails were received by Mr. Gunter from his private association co-members.

Certainly 104 out of hundreds of thousands of emails sent each year within the JEDCO email system could be considered de minimis. Further, neither the number of times that Mr. Gunter had his administrative assistant, Ms. Weeks, forward or print out an email (a total of 7 times), nor the tenor of the email he sent to Ms. Weeks could be considered compulsory or coercive, within the meaning of LSA-R.S. 42:1116(B).[12]

Our review also reveals that the content of the emails consisted of the discussion of private political matters of the private associations, which had nothing to do with JEDCO operations. Therefore, we find no manifest error in the district court's factual findings to that effect or the district court's finding that the plaintiff considered his communications with his private association co-members to have been private.

Nevertheless, we conclude that upon balancing the public's right to inspect the emails at issue against the plaintiff's constitutional rights of freedom to associate and privacy in one's associations, we conclude, as did the district court, that, under the particular facts of this case, the latter may be adequately protected by redaction. Accordingly, we conclude that the email at issue may be disclosed in connection with the media-intervenors' public records request in this case, subject to redaction as ordered by the district court.[13]

Custodian for Purposes of the Public Records Law

The final issue to be resolved is whether both Jefferson Parish and JEDCO

---

[12] See **Tebbe v. Louisiana Commission on Ethics for Public Employees**, 540 So.2d 270 (La. 1989) (reversing a decision of the Commission on Ethics for Public Employees, which had found a violation of the state ethics code arising out of a vocational school director's use of a subordinate instructor and his secretary to type papers needed for his master's degree).

[13] We note that the proposed redactions contained in "Jefferson Parish Exhibit 'A' _with redactions_" were insufficient and not in compliance with the district court directions, which we uphold herein, stating that the redactions should encompass the identities of all persons reasonably believed to have been private citizens, and not public employees, at the time the emails were written, and should include names, addresses, email addresses, phone numbers, and places of employment, within the sender, recipient, address, and body sections of the emails, as well as within any attachments to the emails.

are custodians of the records at issue in this case. Both Jefferson Parish and the media contend that Jefferson Parish is a "custodian," which must respond to a public records request seeking access to the email records, for purposes of the Public Records Law. Contrarily, Mr. Shane and JEDCO contend, in essence, that since the email records were created by a JEDCO employee JEDCO is the Public Records Law "custodian" of the records.

The word "custodian" is defined by LSA-R.S. 44:1 as "the public official or head of any public body *having custody <u>or</u> control of a public record*, or a representative specifically authorized by him to respond to requests to inspect any such public records." Further, LSA-R.S. 44:31(A) states: "Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees." (Emphasis added.)

While the word "custody" may incorporate both an aspect of physical possession and of legal control,[14] since LSA-R.S. 44:1 explicitly defines a public records custodian as a public official who has "custody" *or* "control" of a public record, it is clear that "custody" under this statute may be a mere physical possession, for purposes of determining who may be a custodian of a public record.[15] This conclusion is supported by the fact that it is not only original records that meet the definition of "public records," rather, pursuant to LSA-R.S. 44:1(A)(2)(a), "public records" also include "all copies, duplicates, photographs, including microfilm, or other reproductions."

Our construction of public records custodian - to include not only the original custodian, but also subsequent public officials who have obtained custody

---

[14] See Black's Law Dictionary 347 (5th ed. 1979) (including within the definition of "custody" the "the idea of the thing being within the immediate personal care and control of the person to whose custody it is subjected . . .").

[15] We are obliged to apply the definition of "custodian" as written by the Louisiana Legislature; if the legislature had intended to restrict the public's right of access to public documents only through a public official who had both custody *and* control, the legislature would have so stated in LSA-R.S. 44:1.

of either the original public record or a copy, duplicate, photograph, microfilm, or other reproduction of the public record - is consistent with the legislative goal of the Public Records Law, as stated in **Landis v. Moreau**, 779 So.2d at 694-95, to resolve all doubt in favor of the public's expansive and unrestricted right to access to public records. Consequently, since both JEDCO and Jefferson Parish have custody of the public records at issue in this case, both agencies meet the definition of "custodian" with respect to these records.[16]

---

[16] We do not find the cited case of **State ex rel. Wogan v. Clements**, 192 So. 126 (La. App. Orl. Cir. 1939), affirmed, 194 La. 812, 195 So. 1 (1940), to be authoritative, as it merely held that the government auditor in that case had not taken custody or possession of the public records at issue. In **State ex rel. Wogan**, the auditor had accessed the public records within the office of the Commissioner of Conservation (no records were removed from the Conservation department office and the Conservation department employees continued to have access to the records when needed); therefore, only the Commissioner of Conservation was found to have had custody of the records for purposes of a public records request.

**CONCLUSION**

For these reasons, we conclude that the LSA-R.S. 44:1(A)(2)(a) definition of "public records," for purposes of the Public Records Law, may encompass email sent on a public employee's government email system, even though the content of the email ostensibly related only to private matters, when that email has been used in the performance of any work, duty, or function of a public body, under the authority of state or local law, unless an exception, exemption, or limitation, under the Louisiana Constitution or in the Public Records Law applies to prevent public disclosure of the record. Further, a "custodian" of a public record may be a public official having either custody (i.e., physical possession) or control of a public record.

**DECREE**

Accordingly, we reverse the appellate court decision, and we reinstate the district court decision. We remand this matter to the district court for further proceedings consistent with the foregoing.

**REVERSED AND REMANDED.**

28

SUPREME COURT OF LOUISIANA

NO. 2014-C-2225

WILLIAM HENRY SHANE

VERSUS

THE PARISH OF JEFFERSON, STATE OF LOUISIANA,

AND THE JEFFERSON PARISH ECONOMIC

DEVELOPMENT COMMISSION

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON*

**Johnson, C.J.**, additionally concurs and assigns reasons.

I agree with the majority opinion in its conclusion that the e-mails in question are public records within the meaning of the Louisiana Public Records Act, and should be released to the public, once redacted. A brief discussion of public records law helps us to further understand this issue. E-mail communications are treated in the same manner as paper records under the public records law in Louisiana. *See City of Pineville v. Aymond*, 2008-0040 (La. App. 3 Cir. 4/30/08), 982 So.2d 292. The Louisiana Attorney General has opined that "e-mails of a purely personal nature received or transmitted by a public employee which have no relation to any function of a public office are not 'public records' as described by the Public Records Act." La. Att'y Gen. Op. No. 10-0272 (April 13, 2011). Jurisprudence in various states across the country is consistent that personal e-mails which are not related to a public official's work are not subject to the Public Records law. According to the Florida Supreme Court, personal e-mail communications do not fall within the definition of public records subject to disclosure by virtue of their placement on a government owned computer system. *State v. City of Clearwater*, 863 So. 2d 149, 154 (Fla. 2003). Likewise, the

Arizona Supreme Court has held that the state's inclusion of e-mail in its open records law does not encompass documents of a purely private or personal nature. Instead, "only those documents having a 'substantial nexus' with a government agency's activities qualify as public records." *Griffis v. Pinal Cnty*, 215 Ariz. 1, 4, 156 P.3d 418, 421 (2007). Under that analysis, e-mail of a personal nature, such as grocery lists or e-mail messages between family members regarding dinner plans, is not subject to disclosure under the public records law.

It is undisputed that Mr. Gunter's e-mails concerned his personal fundraising efforts for candidates involved in the 2010 Jefferson Parish School Board election. E-mails of this nature have no reasonable connection to the business of JEDCO, and would not reasonably be considered public records of JEDCO. Notwithstanding this, the majority opinion correctly reasons that Mr. Gunter's e-mails were "used to perform a function conducted by order of a public body" in accordance with La. Rev. Stat. Ann. 44:1(A)(2)(a). Namely, the records were used by Jefferson Parish to conduct its governmental audit of JEDCO. As no exception or exemption exists within the Public Records Act to shield the e-mails from disclosure, the majority opinion then appropriately considers Plaintiff's First Amendment privacy and associational interests, which he argues should prevent the e-mails from being disclosed.

On the contrary, I believe the public's right to discover what public employees are doing during the workday, in the workplace, using resources procured by public funds, is paramount and trumps Plaintiff's individual interests in this case. While Mr. Shane, a private citizen, may reasonably assert an expectation of privacy in e-mail communications expressing his personal political affiliations, Mr. Gunter, by virtue of his position as a public official, may not. The evidence in the record is clear that Mr. Gunter improperly used his position and public resources to engage in political activity which he had reason to know was

2

prohibited. In fact, Mr. Gunter resigned from his post as Executive Director of JEDCO as a result of this unethical conduct. I believe that the redaction ordered by the district court strikes the appropriate balance between Mr. Shane's privacy and associational interests and the public's compelling interest in preserving transparent, ethical government dealings.