**EMILY WASHINGTON**                \*         **NO. 2020-CA-0470**

**VERSUS**                     \*

                               **COURT OF APPEAL**

**LEON CANNIZZARO**           \*

                               **FOURTH CIRCUIT**

                           \*

                               **STATE OF LOUISIANA**

                   **\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-04581, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
\* \* \* \* \* \*
**Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Tiffany G. Chase)

James W. Craig
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER
4400 S. Carrollton Avenue
New Orleans, LA 70119

Hannah Lommers-Johnson
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER
4400 S. Carrollton Avenue
New Orleans, LA 70119

       COUNSEL FOR PLAINTIFF/APPELLEE

David M. Fink
LAW OFFICE OF BERNARD L. CHARBONNET, JR., APLC
One Canal Place
365 Canal Street
Suite 1100
New Orleans, LA 70130

Bernard L. Charbonnet, Jr.
LAW OFFICE OF BERNARD L. CHARBONNET, JR., APLC
One Canal Place
365 Canal Street
Suite 1100

New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**MARCH 17, 2021**

*TFL*

*EAL*

*TGC*

This is a mandamus action.  Appellee, Emily Washington, filed a petition for a writ of mandamus to compel Leon A. Cannizzaro, Jr., in his Official Capacity as the District Attorney for Orleans Parish ("District Attorney"), to disclose records of subpoenas sought in an earlier public records request.  The District Attorney now appeals a judgment in civil district court holding that the District Attorney's Office was arbitrary and capricious in failing to produce the requested public records for Ms. Washington, assessing a penalty for that failure, and awarding Ms. Washington attorney's fees.  We find that the district court correctly held the actions of the District Attorney's Office to be arbitrary and capricious in failing to produce the requested public records.  We find that the district court did not err in assessing a penalty for that failure and deem that the award of attorney fees and costs was correct.  Accordingly, this judgment is affirmed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To establish a clear timeline of the factual background and procedural history of this matter, the foregoing table is provided.

1

| Summary of Factual & Procedural History | |
|---|---|
| **Date** | **Action** |
| May 13, 2014 | District Attorney instructs staff to use "DA notifications" |
| May 7, 2015 | Ms. Washington submits public records request to District Attorney |
| May 11, 2015 | District Attorney responds to Ms. Washington's request |
| June 10, 2015 | Ms. Washington sends follow-up letter to her request |
| June 24, 2015 | District Attorney sends second response to Ms. Washington |
| April 26, 2017 | *The Lens* releases report re. unauthorized subpoenas |
| May 12, 2017 | Ms. Washington files petition for writ of mandamus to compel disclosure of the requested public records |
| May 18, 2017 | Ms. Washington files amended petition |
| May 24, 2017 | District Attorney files dilatory and peremptory exceptions to the petition |
| November 2, 2017 | District court grants District Attorney's exceptions |
| December 2, 2017 | Ms. Washington files devolutive appeal |
| November 7, 2018 | This Court overturns exceptions and remands to district court |
| November 9, 2018 | District Attorney sends third written correspondence to Ms. Washington |
| January 15, 2019 | Ms. Washington sends counterproposal to District Attorney's November 9 letter |
| June 14, 2019 | District Attorney first delivers responsive documents to Ms. |

| | |
|---|---|
| | Washington |
| July 27, 2020 | On remand, district court issues judgment for Ms. Washington |
| August 3, 2020 | District Attorney files suspensive appeal |

On May 7, 2015, Ms. Washington issued a public records request to the District Attorney's Office, pursuant to the Louisiana Public Records Law, seeking:

1. any motion or request for subpoenas or subpoenas duces tecum sought pursuant to Art. 66 and/or presented to any section of the Orleans Parish municipal court, magistrate court, or criminal district court;
2. any motion or request for subpoenas or subpoenas duces tecum issued pursuant to Art. 66 by the clerk of any section of the Orleans Parish municipal court, magistrate court, or criminal district court or issued by the Office of the Clerk of Court for Orleans Parish municipal court, magistrate court, or criminal district court;
3. any records of service of subpoenas or subpoenas duces tecum issued pursuant to Art. 66 and served by representatives/commissioned investigators of the Orleans Parish District Attorney, by representative/commissioned investigators of the Louisiana Office of Attorney General or by the Orleans Parish Sheriff's Office;
4. any records of the return of subpoenas or subpoenas duces tecum issued pursuant to Art. 66;
5. any records of the Orleans Parish District Attorney moving for contempt of court for failure or refusal to comply with a subpoena or subpoena duces tecum issued and served pursuant to Art. 66.

On May 11, 2015, the District Attorney's Office sent a letter to Ms. Washington stating that it could not provide the information requested because it did not maintain a database that would allow it to determine the location of:

1. records of any of the subpoenas or subpoenas duces tecum sought by District Attorney's Office pursuant to Article 66 of the Louisiana Code of Criminal Procedure;
2. motions or requests for subpoenas;
3. subpoenas or subpoenas duces tecum issued;

4. service of subpoena or subpoenas duces tecum issued;
5. returns on subpoenas or subpoenas duces tecum issued;
6. motions moving for contempt of court for failure to comply with a subpoena or subpoena duces tecum.

Ms. Washington considered this letter to be a violation of the Public Records Law and contacted employees of the District Attorney via telephone to continue her attempt to obtain the records. After a conversation with the District Attorney's Record Manager, Ms. Washington sent a letter to the District Attorney's Office on June 10, 2015, requesting that they work together to establish a schedule for Ms. Washington to search closed case files herself for the desired records. On June 24, 2015, the District Attorney's Office responded. Their response stated that her request was overly broad and that production of the records would be unduly burdensome, requiring the review of thousands of closed files. They further stated that many of those files were stored off-site, with a retrieval fee of $8.10 per file. The District Attorney's Office then directed Ms. Washington to the Orleans Parish Criminal Clerk of Court, stating: "the subpoenas/subpoenas duces tecum issued at the request of the Orleans Parish District Attorney's Office are part of the criminal record, and therefore, the Clerk of Court of the Orleans Parish Criminal District Court is the proper custodian of these records." Ms. Washington did in fact, prior to this response, serve a Public Records Request on the Clerk of Court and on each section of Orleans Parish Criminal District Court. The Judicial Administrator for Criminal District Court responded that the records were not in the custody of any section of criminal court in Orleans Parish. The Clerk of Court responded that the

request could not be met, as the office had no way of identifying subpoenas issued pursuant to Article 66.

On April 26, 2017, media reports revealed that the District Attorney's Office was writing and serving subpoenas upon witnesses seemingly under the authority of Article 66 without securing a judge's signature.[1] Ms. Washington then filed a petition for a writ of mandamus on May 12, 2017, to compel the District Attorney's Office to disclose records of subpoenas sought in the initial request, "both real and fraudulent." Her petition alleged that subpoenas issued without judicial approval would not be in the custody of the court and would instead be in the possession of the District Attorney, contrary to that office's earlier assertions. On June 30, 2017, the District Attorney filed exceptions of unauthorized use of ordinary proceeding, no cause of action, and nonjoinder of a party. Ms. Washington filed her opposition and a hearing on the exceptions was held in October 2017. The district court granted the District Attorney's exceptions of unauthorized use of ordinary proceeding and no cause of action, dismissing Ms. Washington's petition with prejudice. Ms. Washington timely appealed the district court's ruling. This Court reversed the district court's judgment on November 7, 2018, finding that Ms. Washington's petition met all the requirements to plead a cause of action and invoke a mandamus proceeding. *Washington v. Cannizzaro*, 18-0125 (La. App. 4 Cir. 11/7/18); 259 So. 3d 421.

---

[1] Charles Maldonado, *Orleans Parish prosecutors are using fake subpoenas to pressure witnesses to talk to them*, THE LENS (April 26, 2017), https://thelensnola.org/2017/04/26/orleans-parish-prosecutors-are-using-fake-subpoenas-to-pressure-witnesses-to-talk-to-them/.

5

On November 9, 2018, two days after this Court's judgment, the District Attorney's Office sent correspondence to Ms. Washington. That correspondence stated that, in regards to her May 7, 2015 request, it had searched all 2014-2018 closed files pursuant to a New Orleans City Council demand and found no responsive documents. The correspondence further stated that it would establish a schedule for her to review 2013 closed files. Regarding files it deemed responsive to the petition for writ of mandamus, the District Attorney's Office stated that it would make any documents within 2014-2018 closed files available to her for review and that no responsive documents existed prior to 2014. Ms. Washington responded on January 15, 2019, requesting a preliminary review to ascertain whether the documents offered would be responsive, outlining a reduced monetary settlement in compromise and asking the District Attorney's Office to make responsive documents available at a mutually agreeable time. Ms. Washington alleges that the District Attorney's office never scheduled a time for her requested review, while the District Attorney alleges that Ms. Washington did not contact them to schedule review until five months later. On June 14, 2019, the District Attorney's Office delivered responsive documents to Ms. Washington.

On remand from this Court and following a trial on the merits, the district court found that the District Attorney's Office acted arbitrarily and capriciously in failing to produce the public records requested on May 7, 2015 and that the District Attorney's Office did not produce responsive documents until June 14, 2019. The

court assessed penalties against the District Attorney's Office and awarded Ms. Washington attorney fees. The District Attorney timely appealed this judgment.

## DISCUSSION

*Standard of Review*

This appeal raises questions of fact and a question of law. Questions of law are reviewed by appellate courts *de novo*, without deference to the legal conclusions of the lower court. *Louisiana Municipal Association v. State*, 04-0227, p. 35 (La. 1/19/05); 893 So. 2d 809, 836. Questions of fact, on the other hand, are reviewed under the manifest error standard, in which appellate courts will not set aside lower court findings of fact unless the lower court was clearly wrong. *Ambrose v. New Orleans Police Dept. Ambulance Serv.*, 93-3099, 93-3110, 93-3112, p. 7-9 (La. 7/5/94); 639 So. 2d 216, 220-21. If the trial court findings are reasonable in light of the entirety of the record, "the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989).

In the case of a writ of mandamus to compel response to a public records request, a district court's factual finding that a custodian acted arbitrarily is considered with great deference by the appellate court and will not be disturbed without manifest error. *Ott v. Clarkson*, 03-1287, p. 3 (La. App. 4 Cir. 12/10/03); 863 So. 2d 663, 665 (citing *Syrie v. Schilhab*, 96-1027 (La. 5/20/97), 693 So. 2d 1173). Similarly, a court's subsequent decision to assess civil penalties is similarly

examined under the abuse of discretion standard. *Innocence Project New Orleans v. New Orleans Police Dep't*, 13-0921, p. 8 (La. App. 4 Cir. 11/6/13); 129 So. 3d 668, 674. A lower court's grant of attorney's fees after a petitioner prevails in a mandamus action against a custodian of public records is a question of law reviewed *de novo* by appellate courts. *Id.*, 13-0921, pp. 6-7, 129 So. 3d. at 673.

## *Assignments of Error*

Appellant argues that the district court erred in four respects: (1) holding that the District Attorney's Office arbitrarily and capriciously failed to produce documents in relation to Ms. Washington's May 7, 2015 public records request; (2) failing to adhere to the legal precedent of this Court's decision in *Maldonado v. Cannizzaro*; (3) finding that Ms. Washington was entitled to $51,450.00 in penalties; and (4) granting attorney's fees and costs to Ms. Washington.

## *Louisiana Public Records Law*

The Louisiana Public Records Law was enacted by the legislature "to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. There was no intent on the part of the legislature to qualify, in any way, the right of access." *Shane v. Parish of Jefferson*, 14-2225, p. 9 (La. 12/8/15); 209 So. 3d 726, 734 (citing *Landis v. Moreau*, 00-1157, p. 4 (La.2/21/01), 779 So. 2d 691, 694–95). In *Shane v. Parish of Jefferson*, the Supreme Court goes on to explain that the law "should be construed liberally in favor of free and unrestricted access to public documents." *Id.*, 14-2225, p. 9, 209 So. 3d at 735. Access can only be denied when the law itself or the Constitution "specifically and unequivocally provide otherwise." *Id.*

The Public Records Law states that "[t]he custodian shall present any public record to any person of the age of majority who so requests." La. R.S. 44:32(A) (2016). When a request for a public record is made, the custodian "who has responsibility for the record shall have the record segregated from other records under his custody so that the public can reasonably view the record." La. R.S. 44:33(A)(1). Custodians have an additional responsibility to "exercise diligence and care in preserving the public record." La. R.S. 44:36(A). Aside from the enumerated exceptions, if a custodian believes a requested record may not in fact be a public record, the custodian:

> "shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction."

La. R.S. 44:32(D). In the event that "segregating the record would be unreasonably burdensome or expensive…the official shall so state in writing and shall state the location of the requested record." La. R.S. 44:33(A)(2).

*Issues for Review*

*1) Arbitrary & Capricious*

The first issue for review is whether the district court erred in finding that Appellant arbitrarily and capriciously failed to produce the records requested by Appellee on May 7, 2015 in accordance with the Louisiana Public Record Law. This is a factual finding by the district court and accordingly will not be set aside absent manifest error. The terms arbitrary and capricious are held to mean "willful and unreasoning action, absent consideration and in disregard of the facts and

circumstances of the case." *Toups v. City of Shreveport*, 10-1559, p. 3 (La. 3/15/11); 60 So. 3d 1215, 1217. Appellant provides further context for these terms with the statement that "when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached." *Carter v. City of Shreveport*, 51,589, p.10 (La. App. 2 Cir. 9/27/17); 244 So. 3d 659, 667.

### a. First Response to the Public Records Request

On May 7, 2015, Appellee requested various records related to La. Code of Crim. Proc. Art. 66 subpoenas[2], including "any motion or request for subpoenas or subpoenas duces tecum sought pursuant to Art. 66 and/or presented to any section of the Orleans Parish municipal court, magistrate court, or criminal district court." Appellant's May 11, 2015 letter stated that it could not provide the information requested because it does not maintain a database that would allow it to determine the location of these records. Although Appellant timely responded, the substance of this response does not fit into one of the possible objections laid out in the framework of the Public Record Law, nor is it in keeping with the requirement that custodians exercise care and diligence in preserving the record. La. R.S. 44:36(A).

---

[2] LA. CODE CRIM. PROC. ANN. art. 66 states:

A. Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum. Service of a subpoena or subpoena duces tecum issued pursuant to this Article upon motion of the attorney general may be made by any commissioned investigator from the attorney general's office, or in conformity with Article 734 of this Code.
B. The contumacious failure or refusal of the person subpoenaed to appear is punishable as a contempt of court.
C. The attorney general or district attorney, respectively, may determine who shall be present during the examination and may order all persons excluded, except counsel for the person subpoenaed.

Thus, Appellant's response appears to be characterized by a lack of well-reasoned consideration for the relevant law.

### b. Second Response to the Public Records Request

After Appellant communicated that it did not maintain a database of the requested records, Appellee narrowed her request to closed files and offered to search the files herself, in keeping with the Public Records Law. *See* La. R.S. 44:33(A)(2). Appellant then conveyed that her request was overly broad because the records were not readily identifiable and locatable. Appellant directed Appellee to the Clerk of Court of Criminal District Court as the proper custodian of subpoenas issued at the request of the District Attorney's Office. Appellee later discovered, through media reporting, that Appellant possessed records of subpoenas issued by its office, arguably under the aegis of Article 66, which would not be in the custody of the Clerk. Appellee filed a petition for writ of mandamus, which compelled Appellant to "to disclose the records requested, including all subpoenas issued pursuant to Article 66— both real and fraudulent—or show cause why he should not be ordered to do so."

Appellant acknowledges that this Court previously ruled against its exception of no cause of action argument that Appellee's public records request and mandamus action requested two different documents. Now, on appeal, the historical facts of the case pertinent to this argument must be considered only to assess the district court's finding that Appellant acted arbitrarily and capriciously. Appellant posits that its response to Appellee's supplemental request was made honestly and upon due consideration, in large part because of its assumption that the records Appellee first requested were "DA notifications", a separate and distinct document from "subpoenas pursuant to Article 66." Appellant erroneously

11

emphasizes to this Court the fact that two judges found support for its argument that the two documents are distinct.[3]  However, the fact that differing, non-binding, opinions may exist on an action is not determinative of its arbitrariness.  Even if these opinions carried jurisprudential weight, courts still require that the differing opinions referenced in *Carter v. City of Shreveport* be based on an action exercised honestly and upon due consideration.

A close examination of the facts at hand reveals that the document Appellant refers to as a "DA notification" was labeled on its face, "SUBPOENA", in large, bold, capital letters.  Directly below this heading is a subheading stating "A FINE AND IMPRISONMENT MAY BE IMPOSED FOR FAILURE TO OBEY THIS NOTICE", echoing the language of Article 66 itself.  *See* LA. CODE CRIM. PROC. ANN. art. 66.  On the left side of the document, under the seal of the District Attorney's Office, the form directly refers to Article 66, reading "You Are Hereby Notified pursuant to LSA-CCRP art. 66 to appear before the District Attorney for the Parish of Orleans, to testify to the truth according to your knowledge in such matters as may be required of you."  Additionally, the form was identified as a subpoena when it was first circulated via email to all District Attorney Office staff on behalf of the First Assistant District Attorney on May 13, 2014.  The email was titled "OPDA Subpoena Template for Your Use" and advised all staff to use the "attached/revised DA Subpoena" from that date forward and, per the First Assistant District Attorney, to save the file in a folder on their computers.  In addition to being labeled on its face and internally as a subpoena pursuant to Article 66, Appellant's employees also held the form out to the public and to the

---

[3] Appellant references a trial court opinion that was later reversed and a dissenting opinion in this Court.

court as subpoenas under Article 66. Reporting from *The Lens* revealed that Assistant District Attorneys sent these forms directly to a potential witness.[4] Trial testimony from Assistant District Attorneys and an investigator confirmed that the office served this form on numerous witnesses. Further testimony from an Assistant District Attorney, corroborated by court records, provided an example of a prosecutor filing a motion with the court seeking an arrest warrant based on non-compliance with the form. In doing so, the District Attorney's Office essentially represented to a judge that the form had Article 66 power and relied on that purported power to seek arrest.

The same First Assistant District Attorney who circulated the "revised DA Subpoena" with instructions for staff to save the file locally also approved, or at least was directly involved in preparing, the supplemental response stating that the records were not readily identifiable and locatable. In that same letter, Appellee was directed to the Clerk to locate records which the First District Attorney knew (or should have known on the basis of his directive), were not filed with the Clerk. Furthermore, while Appellant was aware that at least some responsive documents existed within its own office, saved to staff computers, there is no indication in the record that any search was conducted for these computer files.

These facts cast serious doubt on Appellant's claim of an honestly held belief that the "DA notification" and "Article 66 Subpoena" were two distinct forms, and, overall, these facts gravely undermine the assertion that Appellant acted honestly and with due consideration in denying Appellee access to requested

---

[4] Charles Maldonado, *Orleans Parish prosecutors are using fake subpoenas to pressure witnesses to talk to them*, THE LENS (April 26, 2017), https://thelensnola.org/2017/04/26/orleans-parish-prosecutors-are-using-fake-subpoenas-to-pressure-witnesses-to-talk-to-them/.

records in both instances of Appellant's responses. Thus, there was a reasonable basis for the district court's ruling that Appellant acted arbitrarily and capriciously.

### 2) *Maldonado v. Leon A. Cannizzaro, Jr.*

The second issue for review is whether the District Court erred in ruling Appellant acted arbitrarily and capriciously in contravention of established legal precedent set forth by this Court in *Maldonado v. Leon A. Cannizzaro Jr.*, 18-0177 (La. App. 4 Cir. 10/10/18); 257 So. 3d 733. In that case, Mr. Maldonado, a staff writer with *The Lens*, issued a public records request to the District Attorney's Office on April 27, 2017, requesting "[a]ny and all District Attorney subpoenas delivered to witnesses" from January 1, 2016 to the date of the request. *Id.*, 18-0177, p. 736, 257 So. 3d at 1-2. The District Attorney denied the request, stating that it was overly broad in scope and therefore highly burdensome, due to the volume of files that would require preparation and the fact that a substantial number of the files were stored off-site with a retrieval fee of $8.10 per file. Less than two weeks later, Mr. Maldonado filed a petition for writ of mandamus to compel production of the requested records and seeking attorney's fees and costs, alleging that the District Attorney was arbitrary and capricious in denying the records. A week later, Mr. Maldonado issued a second request and was again denied. The parties met on the same day as the denial in the hopes of resolving the matter.

In a third attempt, Mr. Maldonado narrowed his request to specific cases and requested all DA subpoenas maintained or saved in the personal case notes or computer files of a handful of Assistant District Attorneys. Three days later, the District Attorney's Office made the majority of these specific case files and two DA subpoenas available for review. Five days after this response, on June 7, 2017,

Mr. Maldonado made a fourth request for "[a]ny and all 'DA subpoenas' maintained or saved in the personal case notes or computer files of all assistant district attorneys." The District Attorney's Office denied that request, stating that personal case notes are excepted from public review and that the request for all DA subpoenas was unreasonably burdensome. Approximately one-and-a-half months later, Mr. Maldonado filed a petition for injunctive and declaratory relief. After trial, the court held, in part, that the District Attorney's Office was not arbitrary and capricious in its actions. Mr. Maldonado appealed and this Court upheld that portion of the judgment, finding:

> [T]he record demonstrates that the D.A. timely responded to each records request, providing an explanation as to why the documents were not readily available, and the difficulty involved in locating the subpoenas within the large volumes of case files. The D.A. met with Mr. Maldonado's attorney in order to resolve the matter. Email communications contained in the record also demonstrate an effort by the D.A. to cooperate with Mr. Maldonado. Furthermore, the D.A. turned over some D.A. subpoenas and made some entire files available to Mr. Maldonado that he chose not to review. Mr. Maldonado acknowledged in his amended petition that he did not want to view entire files. Rather, he only wanted to be supplied with the D.A. subpoenas.

*Maldonado*, 18-0177, p. 14; 257 So. 3d at 743.

Appellant argues that the holding in *Maldonado* controls the present case, as the same article in *The Lens* gave rise to both cases and Appellant's actions in the instant case mirror its actions in *Maldonado*. Appellant asserts that in both cases, it timely responded to each request and ultimately gave the same reason for denial – the breadth of the request made it unreasonably burdensome due to how the files were maintained.

Appellant here states that two days after this Court found that Appellee's petition met all the requirements to plead a cause of action, it issued

15

correspondence on November 11, 2018 to Appellee summarizing the results of a lengthy and expensive search that yielded no results to her initial request. At the same time, they offered to establish a schedule for her to review closed files from 2013. Still maintaining that "DA notifications" and "Article 66 subpoenas" were different forms, it informed Appellee that it would make any closed files from 2014-2018 responsive to the amended petition available for her review. Last, Appellant informed her that there were no responsive documents to her writ prior to 2014, which is when the "DA notification" form was created. Appellant states that Appellee refused to appear to review the files offered, as Mr. Maldonado also did. However, Appellee counters that she did attempt to schedule a time to review files, but Appellant only offered her the files in exchange for abandoning the present litigation. It was only seven months later, on June 14, 2019, that Appellee received the 2013 closed files – in the estimation of the district court, the first responsive files delivered.

The timeline of requests and responses in this case, as well as the actions undertaken by the parties around that correspondence, deviates significantly from the facts in *Maldonado*. Appellant's first response to Appellee was a denial based on the fact that it did not maintain a database that would allow it to determine the location of the requested records, in violation of the Public Records Law. This is in contrast to the events in *Maldonado*, where Appellant's first response was a denial based on the burdensomeness of the request, more closely resembling its second response to Appellee. Still, *Maldonado* "recognized the responsibility of the D.A., as a public agency, to be accountable for the way it executes its duties", even whilst it likewise acknowledged that record requests may be burdensome. This Court then upheld the district court's finding that a request for DA subpoena

records covering one and a half years was not overly burdensome. *Maldonado*, 18-0177, p. 11; 257 So. 3d at 741.

Turning to the actual delivery of documents, records were made available to Mr. Maldonado within weeks of his first request, whereas Appellee here only received responsive documents four years after her initial request. Also notable is the fact that these responsive documents were only shared with Appellee two years after Appellant had already made files available to Mr. Maldonado's respectively later request. Appellant further claims that it undertook a "gargantuan effort" to make available to Appellee the documents listed in the November 2018 correspondence. It is notable, however, that those documents were collected in response to a demand by the New Orleans City Council and not, as implied, as part of an effort conducted on Appellee's behalf. While accounts differ in regards to whether Appellant offered files in exchange for narrowing the request to a level it considered manageable, the first documentary record of an attempt to offer files was in the November 2018 correspondence. This was a year and a half after Appellee's initial request. In her response to that singular attempt, Appellee requested a preliminary review of the files to ascertain their responsiveness and then outlined a settlement in compromise, to which Appellant submitted no written response.

Additionally, while Appellant states that Appellee, unlike Mr. Maldonado, never objected to the denials, the Public Records Law does not require objection to denial as a threshold issue, nor does Appellant state any other basis in law which would justify its position that an objection is a necessary precondition to a court finding its actions to be arbitrary and capricious. *See* La. R.S. 44:35(A). A further distinction is that Appellant willfully misdirected Appellee to the Clerk as

17

custodian. This conduct strengthens the finding that Appellant's behavior was arbitrary and capricious. Although Appellee had already directed a request to the Clerk prior to Appellant's misdirection, this does not alter the fact that there was an attempt to misdirect Appellee as to the location of at least some responsive documents. That the attempt at misdirection may not have been fruitful is not probative of whether or not there was an attempt to misdirect.

The commonality of Appellant's conduct in the two cases is the timeliness of their written correspondence. In all other respects, including the substance of the responses and the actual delivery of responsive files, the facts differ substantially. These distinguishable facts form a reasonable basis for upholding the district court's ruling that Appellant acted arbitrarily and capriciously in this case.

### 3) Civil Penalties

The third issue for review is whether the district court erred in awarding Appellee financial penalties pursuant to La. R.S. 44:35(E)(1). The district court's award of civil penalties under the Public Records Law is assessed under an abuse of discretion standard, and the court of appeal will not overturn an award of penalties absent an abuse of that discretion. *Innocence Project*, 13-0921, p. 2; 129 So. 3d at 671. "The trigger for a discretionary award of civil penalties is the failure of the custodian to properly respond to a requester within the three-day statutory period. The trial judge must also find that the custodian's failure to respond to the requester was unreasonable or arbitrary." *Id.*, 13-0921, p. 5, 129 So. 3d at 674.

La. R.S. 44:35(E)(1) reads:

If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any

18

actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.

La. R.S. 44:32 requires that a custodian "present any public record to any person of the age of majority who so requests" and to "provide copies to persons so requesting." Reasonable fees may be charged for copies, but no fees shall be charged for reviewing or examining the record itself. If a custodian raises a question as to whether a record is public, it must respond within three business days notifying the requester of their determination and explaining their rationale. *Id.*

Here, the district court held that "defendant acted arbitrarily and capriciously in failing to produce to plaintiff the documents she requested in her Public Records Request of May 7, 2015" and further found that "defendant did not produce documents responsive to plaintiff's Public Records Request until June 14, 2019…The court assesses defendant's penalty for its arbitrary and capricious failure to produce the records at fifty dollars ($50.00) per day." Appellant argues on appeal that this language improperly combined the damages clause, wherein damages may be awarded for withholding documents, and the civil penalty clause, wherein penalties may be awarded for a failure to respond. However, the failure to respond that triggers discretionary civil penalties is a failure to "properly respond." *Innocence Project*, 13-0921, p. 11; 129 So. 3d at 675. While the custodian in *Innocence Project* completely ignored the requests, in this case, the substance of Appellant's responses, while timely, were of a willful and unreasoning nature, and were executed absent consideration for and in violation of La. R.S. 44:32. Under

19

that Section, Appellant was required within three days either to present the record requested, to separate the nonpublic portions of the record and make the remainder available for examination, or, in the alternative, to notify Appellee of the reason it deemed the record not to be a public record. Appellant did neither here. Appellant's first response inappropriately provided the lack of a searchable database as justification for the denial. Appellant's second response cited the breadth of the request and its burdens on the office as justification for a denial and misdirected Appellee to the Clerk of Court for records that were, in part, in Appellant's possession. Appellant only properly responded on June 14, 2019, four years after Appellee's first request. As discussed, these actions were reasonably held to be arbitrary and capricious; therefore the response was not proper and the district court did not abuse its discretion in awarding Appellee civil penalties.

### 4) Time Period for Civil Penalties

The fourth issue is whether, if the district court correctly awarded financial penalties under La. R.S. 44:35(E)(1), the court correctly calculated the applicable time period. La. R.S. 44:35(E)(1) states that:

> [I]f the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.

The district court calculated the relevant time period from the date of the first request, May 7, 2015 through the date it held that responsive documents were delivered, June 14, 2019. The district court set the penalty at fifty dollars per day, which is half of the allowable amount. Appellant contends that the court should have excluded the time in which Appellee did not object to the responses, the time the parties spent in litigation, and the time during which Appellant argues Appellee

20

refused to accept responsive documents from Appellant. The first exclusion called for by Appellant lacks merit, as the Public Records Law does not require Appellee to object. La. R.S. 44:35(A). However, even if there were a basis in law for this argument, Appellee details numerous occasions in which she did object to the responses, including in a series of phone calls with multiple members of Appellant's office. Similarly, Appellant points to no law which supports the exclusion of time spent in litigation. The Public Records Law clearly contemplates litigation, and hence settlement offers, through inclusion of the writ of mandamus mechanism. If the legislature intended an exclusion for litigation or settlement offers to apply, it would have explicitly stated so, as it did for weekends and legal public holidays. In addition, the facts do not support Appellant's argument that Appellee refused to accept responsive documents and the trial court properly held that responsive documents were only tendered on June 14, 2019.

Appellant further contends that because it took the position that the initial request and amended writ constituted requests for two different documents in good faith, this Court should decrease period of fine calculation. However, Appellant cites no law in support of this proposition and Appellant's actions in this case have already been held to be arbitrary and capricious. For these reasons, we find that the district court did not abuse its discretion in awarding financial penalties under La. R.S. 44:35(E)(1) from the date of Appellee's initial request to the delivery of responsive records.

### 5) *Attorney Fees and Costs*

The final issue for review is whether the district court erred in awarding Appellee attorney fees and costs. The granting of an award for attorney fees and

costs is a question of law that appellate courts examine *de novo*. *Innocence Project*, 13-0921, p. 7; 129 So. 3d at 673.

La. R.S. 44:35(D)(1) holds that if a person seeking a public record prevails in a suit for the record, they "shall be awarded reasonable attorney fees and other costs of litigation." However, if that person partially prevails in litigation, "the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof." Appellant cites to a Third Circuit case reasoning that:

> [R]ecovery of attorney's fees is not available to one who represents himself because he has incurred no out-of-pocket expenses. Attorney's fees are awarded to a successful litigant so that his recovery might not be diminished by the expense of legal representation. To allow an attorney filing suit in proper person to recover attorney's fees when he has not actually incurred their expense gives him a monetary advantage unavailable to anyone hiring counsel.

*Lambert v. Byron,* 94-854, p. 3 (La. App. 3 Cir. 2/8/95); 650 So. 2d 1201, 1203. Appellant argues that like circumstances exist here because Appellee identified herself in filings as an attorney of the organization where her attorneys are also employed and because Appellee could not identify the fee structure she had agreed upon with her attorneys. However, the same case finds that "an attorney who employs another attorney to represent him is not prevented from recovering attorney's fees." *Id.*, 95-854, p. 3, 650 So. 2d at 1202. That is precisely the case here. The fact that Appellee is herself an attorney and colleague of her counsel does not mean that she appeared *pro se* or that their contractual relationship is a fiction. Instead, Appellee attested to an oral agreement with her counsel, who committed substantial time in this case in the reasonable expectation that if the suit were to prevail, attorney fees would be recoverable. Awarding Appellee attorney fees does not undermine the intent of the Public Records Law by granting her an

22

unfair advantage over others. Indeed, the law itself anticipates contingency agreements in creating the mechanism by which attorney fees are recoverable.

Appellant alternatively argues that an award of attorney fees and costs is discretionary unless the court grants all relief prayed for by the petitioner. Further, Appellant argues that under these circumstances, the court can take into consideration the good faith efforts of the custodian.

The controlling law in this jurisdiction holds that petitioner need only prevail on the object of their suit. *Ferguson v. Stephens*, 21 Media L. Rep. 2119 (La. App. 4 Cir. 1993); 623 So. 2d 711, 717. In a mandamus action, the object of the action is access to public records, and the object is achieved if access is granted after beginning litigation. *Mercato Elisio, L.L.C. v. City of New Orleans*, 18-0081, p.13 (La. App. 4 Cir. 11/21/18); 259 So. 3d 1235, 1244. In this case, Appellee did prevail in the object of her action after commencing litigation, which was to gain access to the requested public records. Furthermore, this Court has held that if good faith was intended to be considered, the legislature would have explicitly provided for as much, as they did in conditioning damages and civil penalties on the arbitrary or capricious conduct of the custodian. *Ferguson*, 623 So. 2d at 716. Still, the court did in fact assess whether the Appellant acted in good faith. It reasonably found that Appellant acted arbitrarily and capriciously, thus an argument of good faith is not relevant to the award of attorney fees.

## CONCLUSION

For the reasons set forth above, we find that the district court did not err in finding that the District Attorney acted arbitrarily and capriciously in failing to produce the requested public records. We find that the district court did not err in

23

assessing a penalty for that failure.  Lastly, we find that the award of attorney fees and costs was correct.  Accordingly, this judgment is affirmed.

**AFFIRMED**