# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of June, 2024** are as follows:

**BY Weimer, C.J.:**

2023-C-01396

*PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS VS. BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND THOMAS GALLIGAN, INDIVIDUALLY AND IN HIS CAPACITY OF PRESIDENT OF LOUISIANA STATE UNIVERSITY* (Parish of East Baton Rouge)

AFFIRMED. SEE OPINION.

Hughes, J., dissents for the reasons assigned by Justice Crain.
Crichton, J., concurs in the result.
Crain, J., dissents in part and assigns reasons.
McCallum, J., dissents in part for the reasons assigned by Justice Crain.
Griffin, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

### No. 2023-C-01396

### PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS

### VS.

### BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND THOMAS GALLIGAN, INDIVIDUALLY AND IN HIS CAPACITY OF PRESIDENT OF LOUISIANA STATE UNIVERSITY

*On Writ of Certiorari to the Court of Appeal, First Circuit,*
*Parish of East Baton Rouge*

**WEIMER, C.J.**

This case arises out of a series of public records requests directed to a public university seeking records related to an ongoing research project involving wild song birds. Certiorari was granted to consider whether the lower courts erred in interpreting and applying the provisions of the Louisiana Public Records Act, La. R.S. 44:1 *et seq.*, in determining that the requested records must be produced. Finding no error in the decision below, the ruling of the court of appeal is affirmed.

## FACTS AND PROCEDURAL HISTORY

This case arises out of a series of public records requests sent by People for the Ethical Treatment of Animals (PETA) to Louisiana State University (LSU) seeking records related to the use and treatment of wild songbirds in the labs of Dr. Christine Lattin, an associate professor in LSU's Department of Biological Sciences.

The first request directed to LSU was sent on May 30, 2019. It sought veterinary care and disposition records dating from September 1, 2018, for the birds

held in Dr. Lattin's laboratory. LSU responded that it had no records responsive to this request.

A second public records request was sent to LSU on August 5, 2019, seeking the same veterinary care and disposition records, but this time covering the period from September 1, 2018, until August 5, 2019 (the date of the request). Assistant General Counsel for LSU, Johanna Posada, responded by email that same date, stating that it was "doubtful anything ha[d] changed," but advising that she would contact Dr. Lattin's office and let PETA know.

When PETA did not receive a follow-up from LSU, it submitted a third public records request on March 17, 2020, this time seeking acquisition records as well as veterinary care records and disposition records for the birds in Dr. Lattin's lab for the period dating from September 1, 2018, until the date of the request, March 17, 2020. A fourth public records request was sent on April 15, 2020, this one requesting veterinary care records and disposition records for birds used in the work of Ph.D. students Keegan Stansberry and Melanie Kimball (students in Dr. Lattin's lab) as well as for birds used in the work of Dr. Lattin.

On May 5, 2020, PETA sent a fifth public records request to LSU. This request seeks correspondence dating from September 1, 2018, between any LSU employees and (1) any employees or representatives of the City of Baton Rouge, (2) any employees or representatives of the City of Baton Rouge's Animal Control & Rescue Center, and (3) Dr. Lattin relating to Dr. Lattin's plans to trap or experiment on birds for her research. A week later, on May 12, 2020, PETA sent a sixth public records request. This request seeks videographic records related to experiments conducted by Dr. Lattin that were funded by the grant, "The Neurobiology of Resilience to Environmental Challenges," awarded to Dr. Lattin by the Louisiana Board of

2

Regents, along with inventories, indexes or catalogues of photographic and videographic records produced and maintained by LSU depicting Dr. Lattin's use of animals in experiments or research. A seventh public records request followed on June 9, 2020, seeking records pertaining to the amendment of Section 14:401 of the Code of Ordinances of the City of Baton Rouge and Parish of East Baton Rouge to create an exemption to the ban on trapping any bird within the corporate limits of Baton Rouge for those holding a "scientific collecting permit."[1]

Having received no records in response to its requests, on December 15, 2020, PETA filed a Petition for Writ of Mandamus, Declaratory Judgment, and Injunctive Relief Pursuant to the Louisiana Public Records Act, naming as defendants the Board of Supervisors of Louisiana State University and Thomas C. Galligan, individually and in his capacity as President of Louisiana State University (collectively "LSU"). The petition alleges that LSU failed to produce records responsive to PETA's seven public records requests. It seeks a writ of mandamus or, alternatively, a declaratory judgment or an injunction directing LSU to immediately make available for inspection and copying all of the information sought in the seven public records requests. In addition, the petition seeks damages and civil penalties, reasonable attorneys fees, and costs.

LSU answered the petition, generally denying PETA's allegations and asserting four affirmative defenses. LSU alleged that it acted reasonably and in good faith, and that its response and timeliness was appropriate considering the extraordinary circumstances of the gubernatorially declared health emergency due to COVID-19.

_____

[1] In 2019, the Code of Ordinances of the City of Baton Rouge and Parish of East Baton Rouge provided in Section 14:400: "The area within the corporate limits of the City of Baton Rouge as they now exist or may hereafter be amended from time to time is hereby designated as a bird sanctuary." Section 14:401, in pertinent part provided: "Within the corporate limits of the city it shall be unlawful to trap, hunt, shoot or molest in any manner any bird or wildfowl or to rob bird nests or wildfowl nests."

It further alleged that the animal care records sought by PETA are records of the Institutional Animal Care and Use Committee (IACUC), a body created by federal law, and, as a result, these records are not subject to the Louisiana Public Records Act. Further, it asserted that certain records PETA requested were exempt from production under La. R.S. 44:4(16) of the Louisiana Public Records Act.

Thereafter, on May 12, 2021, PETA filed a supplemental petition in which it alleged that subsequent to the filing of its lawsuit, it submitted an eighth public records request to LSU, again seeking all photographs and videographic records of birds held or used by Dr. Lattin from September 1, 2019, until date of fulfillment of the request, and all veterinary care records for birds held or used by Dr. Lattin from April 15, 2020, to date of fulfillment. The petition avers that LSU responded to this request with an assertion that the records are exempt from disclosure. The petition seeks a judgment finding that LSU violated the Public Records Act by wrongfully withholding documents responsive to the eighth public records request, a mandamus directing LSU to provide all responsive records, and an award of civil penalties, reasonable attorneys fees, and costs. LSU answered this supplemental petition, denying the allegations.

Cross motions for summary judgment asserted by PETA and LSU were denied by the district court, and the matter ultimately proceeded to an evidentiary hearing on December 14, 2021. Following the close of evidence, the district court took the matter under advisement. On January 11, 2022, the district court orally ruled in favor of PETA, granting PETA access to all the records it requested. A written judgment consistent with the oral ruling was signed by the district court on June 15, 2023, ordering LSU to produce (1) the animal care records PETA requested of LSU, (2) the video recordings of Dr. Lattin's experiments on songbirds that PETA requested of

4

LSU, and (3) the records relating to Dr. Lattin's trapping of and experiments on birds and to the amendment to the City of Baton Rouge's bird ordinance that PETA requested of LSU.[2] The issue of PETA's entitlement to damages, civil penalties, reasonable attorneys fees, and costs was reserved for a separate determination, and the judgment was certified as a partial final judgment. LSU appealed.

Following a thorough and exhaustive review of the evidence and the applicable law, the court of appeal rendered judgment reversing in part, amending, and as amended, affirming in part the judgment of the district court. **People for the Ethical Treatment of Animals v. Board of Supervisors of Louisiana State University**, 22-0976 (La.App. 1 Cir. 9/19/23), 376 So.3d 178. Specifically, the court of appeal found that PETA's sixth public records request, dated May 12, 2020, requesting videographic records related to experiments carried out by Dr. Lattin and funded by the grant "The Neurobiology of Resilience to Environmental Challenges," as well as any inventories of these records produced and maintained by LSU, had in fact been answered by LSU. In response to this records request, Dr. Lattin testified that her research related to the Board of Regents grant did not start until late summer/early fall of 2020, which was after the date of the request and, therefore, she had no video recordings responsive to the May 12, 2020 public records request, nor did she keep inventories of videographic records in her lab. Because this evidence was unrefuted, and because PETA did not suggest that the response to its sixth request was incomplete or inaccurate, the court of appeal found that the district court abused its

---

[2] Originally, the district court signed two judgments in conjunction with its oral ruling. However, because the judgments did not reference the actual public records requests, they lacked the definiteness and certainty of an appealable judgment. Upon order and remand by the court of appeal, the district court signed an amended judgment on June 15, 2023, and it is from this amended judgment that this review emanates.

discretion insofar as it ordered the production of the records sought through the May 12, 2020 public records request. *Id.*, 22-0976 at 12-13, 376 So.3d at 188.

With respect to PETA's eighth public records request, dated April 9, 2020, wherein it sought the production of all photographs and videographic records of birds held and/or used by Dr. Lattin or any other person under her supervision from September 1, 2019, to the date of fulfillment of the request, the court of appeal found that LSU established that Dr. Lattin's research may lead to patentable or licensable data, records, or information and that, as a result, the requested records are exempt from production under La. R.S. 44:4(16)(b) until such time as they are publicly released, published, or patented. The court of appeal went on to find, however, that Dr. Lattin acknowledged that she had utilized portions of the videos for an article she had published, and for presentations and seminars she had given.[3] The court of appeal determined that these video recordings are not exempt from production under La. R.S. 44:4(16)(b) because they have been publicly released or published. Ultimately, the court of appeal concluded that the district court had erred insofar as it ordered LSU to produce the video recordings that were not utilized by Dr. Lattin for the article or for her presentations and, therefore, had not been publicly released or published. The court of appeal, thus, found that it was necessary to amend the district court's judgment to exclude those video recordings that remain exempt from production under La. R.S. 44:4(16)(b). *Id.*, 22-0976 at 15-16, 376 So.3d at 190.

In all other respects, including the orders requiring LSU to produce the animal care records, the records relating to the amendment of the City of Baton Rouge's bird

---

[3] Specifically, in answers to interrogatories and her testimony, Dr. Lattin explained that out of the 647 total hours of video amassed, 180 hours of the videos were utilized for an article that she published on neophobia, 204 video hours were utilized for presentations she made in January, March, and December of 2020, as well as in January and February of 2021, and 263 video hours were utilized at two seminars in January of 2021.

ordinance, and the records relating to Dr. Lattin's experiments on songbirds, the court of appeal found no error on the part of the district court. *Id.*, 22-0976 at 21, 376 So.3d at 193.

Upon application of LSU, certiorari was granted to examine the correctness of the lower court rulings. **People for the Ethical Treatment of Animals v. Board of Supervisors of Louisiana State University**, 23-01396 (La. 1/24/24), 377 So.3d 685.

## LAW AND ANALYSIS

This case involves the right of access to public records, a right guaranteed by the constitution. Louisiana Const. art. XII, § 3 declares: "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."

The constitutional right of access to public records is implemented through the Public Records Law. La. R.S. 44:1 *et seq.* Through that law, the legislature sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the law deems to be public. **Shane v. Parish of Jefferson**, 14-2225, p. 9 (La. 12/8/15), 209 So.3d 726, 734. In enacting the law, there was no intent on the part of the legislature to qualify, in any way, the right of access. **Landis v. Moreau**, 00-1157, p. 4 (La. 2/21/01), 779 So.2d 691, 694-95 (*quoting* **Title Research Corp. v. Rausch**, 450 So.2d 933, 937 (La. 1984)).

In furtherance of the right of access, the Public Records Law "recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records." La. R.S. 44:4.1(A). Therefore, the law provides that "all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided

7

for in [the Public Records Law] or the Constitution of Louisiana," and "[a]ny exception, exemption, and limitation" not provided for in either the Public Records Law or the Constitution of Louisiana "shall have no effect." *Id.* As a result, access to public records can be denied only when the Public Records Law or the Constitution of Louisiana specifically and unequivocally provides otherwise. **Shane**, 14-2225 at 9, 209 So.3d at 735.

As the court has long recognized, as is the case with Const. art. XII, § 3, the Public Records Law must be construed expansively in favor of free and unrestricted access to public documents. **Shane**, 14-2225 at 9, 209 So.3d at 735; **Landis**, 00-1157 at 4, 779 So.2d at 695; **Title Research**, 450 So.2d at 937. "Whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see; to allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights." **Boren v. Taylor**, 16-2078, p. 4 (La. 6/29/17), 223 So.3d 1130, 1132.

Pursuant to the Public Records Law, and except as otherwise provided, any person of the age of majority may inspect, copy, or reproduce any public record, or obtain a copy of any public record in accordance with the law's provisions. La. R.S. 44:31(B). By definition, "public records" consist of the following:

> All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including electronically stored information or information contained in databases or electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or

8

under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.

La. R.S. 44:1(A)(2)(a).

A "public body" is defined as "any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function, or an affiliate of a housing authority." La. R.S. 44:1(A)(1). As an instrumentality of state government, it is undisputed that LSU is a public body.

The Public Records Law is enforced through the procedure set forth in La. R.S. 44:35. This statute allows "[a]ny person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record, ... either by a determination of the custodian or by the passage of five days, ... from the date of his in-person, written, or electronic request" to "institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief." La. R.S. 44:35(A). In such a proceeding, "the court has jurisdiction to enjoin the custodian from withholding records or to issue a writ of mandamus ordering the production of any records improperly withheld from the person seeking disclosure." La. R.S. 44:35(B). The matter is to be determined by the court *de novo*, with the burden of proving the public record was properly withheld resting squarely with the custodian. *Id.*; see also, La. R.S. 44:31(B)(3) ("The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.").

As a general rule, a district court's judgment on a writ of mandamus seeking the production of public records is reviewed under an abuse of discretion standard,

while the court's factual findings in such a proceeding are subject to manifest error review.[4] **Talley v. Louisiana Dep't of Transp. & Dev.**, 22-0983, p. 13 (La.App. 1 Cir. 2/24/23), 361So.3d 1041, 1050, <u>writ denied</u>, 23-00557 (La. 6/7/23), 361 So.3d 976. However, questions of law, such as the proper interpretation of a statute, are reviewed *de novo*. **Louisiana Municipal Association v. State**, 04-0227, p. 35 (La. 1/19/05), 893 So.2d 809, 836.

Guided by these principles, we now turn to an examination and analysis of the issues presented on review. Basically, it is LSU's contention that the lower courts erred in ordering the production of four categories of records requested by PETA: (1) animal use/veterinary care records; (2) video recordings emanating from Dr. Lattin's experiments; (3) communications relating to Dr. Lattin's plans to trap or experiment on birds and to amend the City of Baton Rouge's wild bird ordinance; and (4) records relating to Dr. Lattin's hiring of private counsel. We will examine each category of records in turn.

*Animal Use / Veterinary Care Records*

In its second, third, fourth and eighth public records requests,[5] PETA sought the production of all veterinary care records–including, but not limited to, daily observation reports, daily health check records, records of veterinarians, adverse event reports, medical care records, cage cards and disposition records–for birds held and/or used in Dr. Lattin's laboratory. LSU contends that these veterinary care

---

[4] While the district court judgment granting PETA relief does not specify whether it was granting the requested writ of mandamus or the alternative mandatory injunction, the standard of review is the same. <u>See</u>, **Smith v. West Virginia Oil & Gas Co.**, 373 So.2d 488, 493 (La. 1979) ("The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court, although that discretion is reviewable if erroneously exercised.").

[5] These requests are variously dated August 5, 2019, March 17, 2020, April 15, 2020, and April 9, 2021. While PETA's first public records request, dated May 30, 2019, also sought veterinary care records, the parties agree that this request was satisfied and is not at issue in this proceeding.

records are records of the IACUC, a body created by federal law and, thus, do not qualify as public records within the meaning of Louisiana's Public Records Law, citing in support of that contention **Dorson v. State**, 94-1591 (La.App. 4 Cir. 6/29/95), 657 So.2d 755.

Citing the testimony of Dr. Rhett Stout, an LSU employee who serves in various roles, including as a rotating member of LSU's IACUC, the district court found that the requested veterinary care records are in fact public records, in the custody of LSU, which LSU must produce. The district court rejected LSU's contention that the records are IACUC records.

On appeal, the court of appeal agreed with the district court's determination that the veterinary care records are public records within the meaning of the Public Records Law. **People for the Ethical Treatment of Animals**, 22-0976 at 11, 376 So.3d at 187. In reaching its conclusion, the court of appeal first noted that LSU qualifies as a "research facility" under the provisions of the Animal Welfare Act, 7 U.S.C. § 2131, *et seq.*(the "AWA"). As such, it is required by federal law to establish a committee to monitor compliance with federal regulations. At LSU, that committee is the IACUC, a committee created pursuant to and existing because of federal laws and regulations, accountable only to federal authorities. Insofar as its records are concerned, the court of appeal found that federal law requires the IACUC to maintain (1) minutes of IACUC meetings; (2) records of proposed activities involving animals, and proposed significant changes in those activities (research proposals), and whether IACUC approval was given or withheld; and (3) records of semiannual IACUC reports on the research facility's programs for the humane care and use of animals and on its facilities. Because these records are generated and maintained pursuant to federal law, the court of appeal explained that these particular records are not subject

11

to Louisiana's Public Records Law, but to the federal government's Freedom of Information Act. *Id.*, 22-0976 at 7-9, 376 So.3d at 185-186.

The court of appeal then turned to the question of whether the veterinary care records sought by PETA also fall under the category of records used, possessed, and retained for use in the performance of LSU's research solely under authority of federal law, rather than pursuant to state law. In doing so, the court of appeal acknowledged the testimony of Dr. Stout, who explained that in his capacity as the alternating veterinarian on the IACUC, he is required to oversee research animals. Specifically, Dr. Stout testified that the animal care and use program, which is part of the federal guidelines, includes the daily care of animals (feeding, watering, walking, brushing, grooming and trimming toenails), as well as veterinary care and monitoring environmental conditions (such as housing, temperature, humidity levels, and size of cage). Dr. Stout explained that the IACUC assumes that animals are being fed and watered daily, but has an obligation to inspect labs twice a year at which time it may–but does not necessarily–look at the animal care records. Dr. Stout further explained that IACUC does not generate or possess the animal care records; nevertheless the animal care and use program is a requirement of federal law to which LSU, as a research facility is subjected. *Id.*, 22-0976 at 9, 376 So.3d at 186.

Based on the evidence presented, the court of appeal rejected LSU's contention that the veterinary care records at issue were used, prepared, possessed, and retained for use solely under the authority of federal law. The court found the **Dorson** case (which LSU cited as controlling) distinguishable because the records at issue in **Dorson**–the minutes of IACUC meetings–were required to be maintained by federal mandate, whereas no such mandate exists relative to the veterinary care records requested by PETA. Specifically, the court of appeal found: "LSU has not pointed

12

to, and we have not found, any federal law or regulation mandating that a research facility like LSU actually maintain records of its implementation of the AWA standards, i.e. the veterinary care or animal use records. Therefore, while the AWA requires research facilities to comply with minimum standards, nothing in the AWA mandates that LSU maintain the records its keeps." *Id.*, 22-0976 at 10-11, 376 So.3d at 187.

Reiterating that records maintained by a public body in the performance of its work, duties, or functions can be denied only when a law specifically and unequivocally provides otherwise, the court of appeal determined that LSU had failed to identify any law denying the public access to the veterinary care records PETA sought. Finally, the court of appeal recognized that LSU's Board of Supervisors is required by state law to ensure that recipients of private and federal funding comply with the rules and regulations governing that funding, which in this case would include the minimum standards requirements of the AWA for the humane treatment and care of animals at research facilities. As a result, the court of appeal reasoned, the veterinary care records for birds held in Dr. Lattin's lab are not generated *solely* according to federal law, but also according to state law and, thus, are subject to production under Louisiana's Public Records Law. *Id.*, 22-0976 at 11, 376 So.3d at 187.

Before this court, LSU argues that the court of appeal erred in concluding that the veterinary care records for birds held in Dr. Lattin's lab are "prepared, possessed, or retained ... under the authority of the constitution or laws of this state" and, therefore, qualify as public records under the Public Records Act. La. R.S. 44:1(A)(2)(a). It maintains that the court of appeal's decision is in conflict with the decision of the Fourth Circuit Court of Appeal in **Dorson**, which, according to LSU,

13

involves "the same party and similar factual and legal issues" and, therefore, compels the same result.

The question presented is, quite simply, whether the veterinary care records requested by PETA fall within the definition of public records set forth in the Public Records Law; *i.e.*, whether the records were "used, ... in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body." La. R.S. 44:1(A)(2)(a). LSU's position is that the veterinary care records do not meet the definition of public records (records created under the authority of state law) because there are *also* federal laws that may apply. But, as the court of appeal recognized, the fact that the AWA requires minimum standards with respect to animal husbandry and veterinary care does not mean that the records of such care are generated *solely* in accordance with federal law. Rather, the evidence adduced at the hearing of this matter demonstrates the veterinary care records are also created and maintained pursuant to state law.

Dr. Stout testified that records regarding birds used by Dr. Lattin at LSU are completed to "have a record of what's happened" and must be maintained to comply with his veterinary license. Veterinary licensure is governed by state law. See, La. R.S. 37:1514 and 37:1533. Further, as the court of appeal recognized, state law requires LSU's Board of Supervisors to ensure that LSU complies with federal law regarding the treatment of animals by virtue of its receipt of federal funding. **People for the Ethical Treatment of Animals**, 22-0976 at 11, 376 So.3d at 187. ("Among the duties of the Board of Supervisors is to actively seek and accept forms of financial

assistance for educational purposes from any public or private person or agency and to comply with rules and regulations governing funding from the federal government or any other person or agency which are not in contravention of the constitution and laws. <u>See</u>, La. R.S. 17:3351(A)(2).") Clearly, then, state law authorizes and applies to the veterinary care records requested.

Neither in this court nor in any of the courts below has LSU identified any law, statute, or regulation that would exempt the veterinary care records–undeniably created and maintained under authority of state law–from Louisiana's Public Records Law. It has not identified any provision in the federal law that would render the Louisiana Public Records Law inapplicable. LSU does not take the position that the AWA preempts state law. Nor could it. <u>See</u>, 7 U.S.C. § 2143(a)(8) (providing that the AWA "shall not prohibit any State (or a political subdivision of such State) from promulgating standards [for the humane handling, care, treatment, and transportation of animals] in addition to those standards promulgated" by the Secretary of Agriculture); 7 U.S.C. § 2145(b) (authorizing the Secretary of Agriculture "to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of [the AWA] and of any State, local, or municipal legislation or ordinance on the same subject."); <u>see also</u>, **Hendricks County Bd. of Zoning Appeals v. Barlow**, 656 N.E.2d 481, 484-85 (Ind. Ct. App. 1995) (collecting cases finding AWA does not preempt state law). Rather, LSU simply takes the position that the records are IACUC records, relying for that proposition on Dr. Stout's testimony and the **Dorson** case. As the court of appeal correctly found, that reliance is misplaced.

In **Dorson**, the plaintiff filed a writ of mandamus to compel the production of records concerning animals used for medical experiments and also sought a

15

declaratory judgment that meetings of the IACUC are subject to the Open Meetings Law, La. R.S. 42:4.1 *et seq*. **Dorson**, 94-1591 at 1, 657 So.2d at 756. After framing the issue before it as "whether IACUC's records were public records within the meaning and intent of the Public Records Law," the court of appeal rendered judgment holding that "the minutes of IACUC meetings are not public records subject to inspection under L.S.A.–R.S. 44:1 *et seq*." **Id.**, 94-1591 at 4, 657 So.2d at 757. As the court of appeal recognized in this case, the records at issue in **Dorson**–the minutes of IACUC meetings–are maintained pursuant to express provisions of federal law. See, 9 C.F.R. § 2.35(a)(1) (providing that a research facility shall maintain "[m]inutes of IACUC meetings, including records of attendance, activities of the Committee, and Committee deliberations"). By contrast, in this case, LSU has not identified any federal law or regulation mandating that a research facility maintain records of its implementation of the veterinary care or animal use records that PETA has requested.

Dr. Stout's testimony does not support a different conclusion. In fact, Dr. Stout testified that he does not consider the medical records he located in response to PETA's public records request to be IACUC records. They are not in the possession or custody of the IACUC and they are preserved in order to maintain his veterinary license, as well as pursuant to the AWA's animal control and use program. Dr. Stout identified what he considers to be the IACUC records as (1) the experimental protocols that professors/investigators submit to the IACUC in order to obtain approval for their proposed projects, (2) IACUC meeting minutes, (3) correspondence between the IACUC and an investigator, (4) correspondence between the IACUC and the university's institutional official, and (5) biannual inspection reports. No such records are at issue in this case.

Dr. Stout did testify that the animal care records sought by PETA are a part of the animal care and use program,[6] a requirement of federal law to which LSU, as a research facility is subjected, but he also testified that the IACUC is not involved in the day-to-day operations of the laboratory where the birds are kept, that records concerning animal care are not sent to the IACUC, and that the IACUC would not have the records if PETA requested them from the IACUC.

As custodian of the veterinary records requested by PETA, it was LSU's burden to prove that the records were properly withheld. La. R.S. 44:35(B). The evidence establishes the Dr. Lattin's experiments on birds and the care that is provided to them by LSU staff in LSU facilities using public monies is LSU business; the records of the care that is provided are not maintained solely in accordance with federal law; state records in relation to that care are maintained because of Dr. Stout's need to comply with the standards of his state veterinary license; state law also governs the treatment of animals used in federally funded experiments; and no federal law has been identified that requires LSU to maintain the animal care records PETA requested, much less one that operates to the exclusion or preemption of applicable state law. Under these circumstances, the lower courts correctly determined that the animal use/veterinary care records PETA requested fall within the definition of public records, and are subject to production under the Public Records Law.

---

[6] Dr. Stout clarified that the cage cards requested by PETA are not a part of the animal care and use program, and LSU offered no evidence to dispute his testimony. These records are, thus, not subject to being withheld on grounds they are IACUC records, generated solely in accordance with federal law. In a similar vein, the evidence demonstrates that LSU produced the disposition records PETA requested.

*Video Recordings*

In its eighth public records request, dated April 9, 2021, PETA sought the production of all photographs and videographic records of birds held and/or used by Dr. Lattin, or any other person under her supervision, from September 1, 2019, until the date of fulfillment of the request. LSU contends that these records are exempt from production under La. R.S. 44:4(16)(b), which provides that the Public Records Law does not apply to:

> Data, records, or information produced or collected by or for faculty or staff of state institutions of higher learning in the conduct of or as a result of, study or research on commercial, scientific or technical subjects *of a patentable or licensable nature*, whether sponsored by the institution alone or in conjunction with a governmental body or private concern, *until such data, records, or information have been publicly released, published, or patented.* [Emphasis added].

While the district court found that this statutory exception does not apply to exempt Dr. Lattin's video recordings from production because "LSU did not carry its burden to prove the videos are patentable or licensable and have not been previously published," the court of appeal disagreed, finding that Dr. Lattin's testimony explaining the nature of her research was alone sufficient to demonstrate that her research may lead to "patentable or licensable data, records, or information," notwithstanding the fact that, because her research was still in its early stages, she had not yet consulted with LSU's Office of Research and Development to determine its patentability or licensability. **People for the Ethical Treatment of Animals**, 22-0976 at 15-16, 376 So.3d at 190. LSU does not dispute this finding.

In its opinion, the court of appeal went on to determine, however, that a finding that material is of "a patentable or licensable nature" does not end the inquiry, as under the statutory provision, such material is no longer protected once it has been "publicly released, published, or patented." Drawing from the testimony of Dr.

18

Lattin, the court of appeal concluded that some of the video recordings requested by PETA had been published in conjunction with an article Dr. Lattin had published and in conjunction with several conferences and seminars at which she had presented her research findings. The court of appeal ruled that these video recordings "are not exempt from production under La. R.S. 44:4(16)(b) because they have been publicly released or published." *Id.*, 22-0976 at 16, 376 So.3d at 190.

Before this court, LSU argues that the court of appeal misconstrued the meaning of the exception set forth in La. R. S. 44:4(16)(b) and that, to be consistent with the purpose of the exception–*i.e.*, to protect data gathered for research until publication of the research–the statute must be interpreted to except data, records or information from production during the period that research is ongoing. According to LSU, because Dr. Lattin testified that her research is ongoing and has not been completed, the video recordings are excepted from disclosure under La. R.S. 44:4(16)(b).

In determining the applicability of the statutory exception at issue, we begin, as we must, with the language of the statute. **Touchard v. Williams**, 617 So.2d 885,888 (La. 1993) ("[T]he starting point for the interpretation of any statute is the language of the statute itself."). The Louisiana Civil Code mandates that when a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without further interpretation of the intent of the legislature. La. C.C. art. 9; see also, La. R.S. 1:4. Further, the words of a law must be given their generally prevailing meaning. La. C.C. art. 11; see also, La. R.S. 1:3.

Here, the words of the statute are clear and unambiguous: excepted from the reach of the Public Records Law are "[d]ata, records, or information produced or

19

collected ... in the conduct of or as a result of, study or research on commercial, scientific or technical subjects of a patentable or licensable nature ... until such data, records, or information have been publicly released, published, or patented." La. R.S. 44:4(16)(b). According this language its plain meaning, it is clear that data, records or information derived from research is only temporarily excepted from the Public Records Law. Once it is "publicly released, published, or patented," the Public Records Law applies. The dispositive language, then, is the phrase "publicly released, published, or patented," and notably absent from this phrase is any qualifying language creating an exception for "ongoing research." There is simply no requirement in the statute that research be "complete" before the Public Records Law applies–only that it be publicly released, published, or patented.

This court has consistently held that access to public documents can only be denied when a law specifically and unequivocally provides otherwise. **Shane**, 14-2225 at 9, 209 So.3d at 735; **Capital City Press v. East Baton Rouge Parish Metropolitan Council**, 96-1979, pp. 7-8 (La. 7/1/97), 696 So.2d 562, 566; **Title Research**, 450 So.2d at 936. Because there is no language in the statute exempting research that is "ongoing" or "incomplete," this court declines the invitation to create an exception for such under the pretext of pursuing the spirit of the law. In enacting La. R.S. 44:4(16)(b), the legislature recognized that once data, information, and records have been publicly released, published, or patented, protection from the Public Records Law is no longer necessary. LSU protests that research that is part of an ongoing project or otherwise not at a stage where it can be patented or licensed will be placed at a competitive disadvantage if subject to public access. However, this concern is a matter of public policy, left to the discretion of the legislature, and

more properly addressed in that venue. It is not for the court to create an exception where none exists.

Through testimony, Dr. Lattin explained that her research is focused on how an animal's stress response helps the animal to cope with different kinds of environmental challenges and how that response can change from something helpful to something that can cause problems for the animal. In furtherance of that inquiry, Dr. Lattin testified that she uses a video camera to record a bird in a cage eating or not eating when a novel object is introduced. As of April 23, 2021, Dr. Lattin testified that she had collected 647 hours of video. Some of those videos had been analyzed for various types of behavior and that behavior data had been published.[7] More particularly, Dr. Lattin testified that in answers to interrogatories, she listed an article and various presentations she made at conferences and seminars with her funding from LSU, and, in the process, identified "what video recordings were made for that particular article or presentation." According to those interrogatory responses and her testimony, Dr. Lattin published an article on neophobia utilizing 180 hours of videos. She made presentations in January, March and December 2020, as well as in January and February 2021, utilizing 204 hours of video. She also utilized 263 hours of videos for two seminars in January 2021. While Dr. Lattin considered that her research had not been "broadly" shared because presentations at conferences are "pretty high level," and usually involved "a graph or two from a project," the Public Records Law does not contain an exception for research that is only "narrowly" shared, or shared only at a "pretty high level." The issue presented is whether Dr. Lattin has publicly released, published, or patented her research material. Based on

---

[7] Dr. Lattin stated: "So there have been–those videos have been analyzed for some types of behaviors. And those behavior data have been published. Some of them have been published."

Dr. Lattin's testimony, the court of appeal determined that the videos she identified as having been used in conjunction with her article and her various presentations are not exempt from production under La. R.S. 44:4(16)(b) because they have been publicly released or published.[8]  This court's review of the law and the evidence establishes that the court of appeal did not err in its straightforward interpretation of either the law or the facts, and that its ruling ordering the production of those video recordings that have been publicly released or published is correct.

*Communications Relating to Dr. Lattin's Plans to Trap or Experiment on Birds and to Amend City of Baton Rouge's Wild Bird Ordinance*

In its fifth public records request, PETA sought the production of all correspondence, electronic or otherwise, covering the period from September 1, 2018 until the date of the request, May 5, 2020, between any LSU employees and (1) any employees or representatives of the City of Baton Rouge, (2) any employees or representatives of the City of Baton Rouge's Animal Control & Rescue Center, and (3) Dr. Lattin, relating to Dr. Lattin's plans to trap or experiment on birds for her research.   Additionally, in its seventh public records request, PETA sought all records pertaining to the March 11, 2020 amendment of Section 14:401 of the Code of Ordinances of the City of Baton Rouge and Parish of East Baton Rouge.

LSU objected to the production, arguing that the requests are unduly burdensome.  The district court rejected this contention, finding that, based on the evidence presented, LSU and PETA had worked together and "narrowed the search

---

[8] To the extent LSU suggests that "splicing up an entire research project, where some of the data must be disclosed while other data is protected, defies the intent of the exemption under La. R.S. 44:4(16)(b)," its argument is at odds with the plain language of the statute, as explained above.  To the extent LSU suggests the videos cannot be segregated to protect the data not subject to disclosure, the court of appeal expressly disagreed, noting that Dr. Lattin did not state that the published hours of video could not be segregated from the over 647 hours of video recordings she has amassed. **People for the Ethical Treatment of Animals**, 22-0976 at 16; 376 So.3d at 190.  LSU offers no evidence to dispute this factual determination.

22

down" to a manageable number of documents. The court of appeal concurred, finding that "LSU offered no evidence showing that the requests for production were so burdensome as to interfere with the operation of LSU's constitutional and legal duties." **People for the Ethical Treatment of Animals**, 22-0976 at 20, 376 So.3d at 192. LSU contests this factual determination, arguing that the conclusion that LSU offered no evidence as to the burdensome nature of the requests is manifestly erroneous.

The Public Records Law mandates that "[t]he custodian shall present any public record to any person of the age of majority who so requests." La. R.S. 44:32(A)(1). In fulfillment of this directive, it is not enough to overcome the public's right of access to public records to claim undue burden or expense; rather, it is only where the request is so burdensome that it interferes with the custodian's constitutional and legal duties that the public's right to access the records may be restricted. **Kreilow v. Louisiana State University Board of Supervisors**, 19-0176, p. 11 (La.App. 1 Cir. 11/15/15), 290 So.3d 1194, 1202. The burden of proof to justify any restriction or limitation on the public's right to access a public record is on the custodian. La. R.S. 44:31(B)(3).

Through La. R.S. 44:32(A)(2), the legislature has provided a mechanism for addressing burdensome requests. According to the provisions of this statute, "[i]f the custodian reasonably determines that the request would substantially disrupt required government operations, the custodian may deny access only after reasonable attempts to narrow or specify the request with the requestor." La. R.S. 44:32(A)(2).

The evidence presented at the hearing of this matter indicates that the parties followed the procedure outlined in La. R.S. 44:32(A)(2). Carlton "Trey" Jones, Deputy General Counsel for LSU, testified that his office handles public records

23

requests for the LSU system. Mr. Jones testified that while PETA's request for trapping records and the records of the amendment to the City's ordinance initially generated a large number of responses, his office worked with PETA to narrow the search terms in an effort to come up with a manageable amount of data that his office could review. That process of narrowing the requests had continued to the date of trial, with Mr. Jones testifying that the most recent search (executed the day before trial) had yielded 27 pages of results for one suggested term and 638 for the other. Mr. Jones explained that his office was in the process of reviewing those records, which he specifically characterized as a "manageable result," for responsiveness so as to remove privileged and protected data. He testified that he was hopeful that the resulting records would satisfy PETA's fifth and seventh public records requests, but if not, LSU was committed to producing the records and would continue to work with PETA to narrow the search terms until a responsive result could be provided.

Given Mr. Jones's testimony that the narrowed search terms had produced a "manageable" number of results, the lowers courts' conclusion that LSU failed to sustain its burden of proving that the requests were so burdensome as to interfere with the operation of LSU's constitutional and legal duties has a clear factual basis in the record and is not manifestly erroneous.

*Records relating to Dr. Lattin's hiring of private counsel*

In its seventh public records request, which, as noted above, sought a copy of all records pertaining to the amendment of the City of Baton Rouge's wild bird ordinance, PETA specifically stated: "Please note that the response should include, but is not limited to, communications on personal devices of LSU employees as well communication platforms such as Slack." LSU responded to PETA's request, stating that Dr. Lattin worked through her personal attorney, and not through LSU, to have

the wild bird ordinance amended, and, as a result, communications through her personal devices are not public records.

The district court rejected LSU's contention, finding that the evidence contradicts LSU's claim that Dr. Lattin's efforts were purely a private affair. According to the district court, "[t]he fact that a public employee used a private email account or private cell phone, or even a private attorney to conduct business does not make public records 'private.'"

The court of appeal affirmed, concluding that implicit in the district court's ruling was a finding that Dr. Lattin's hiring of counsel related to the work, duty, or function of LSU, making it a public record subject to the Public Records Law. The court of appeal found that the district court's factual determination in this regard was not manifestly erroneous, and that the order directing LSU to produce the records of the amendment to the City's ordinance was not clearly wrong. **People for the Ethical Treatment of Animals**, 22-0976 at 18, 376 So.3d at 191.

Before this court, LSU argues that the lower courts erred in ordering the production of Dr. Lattin's records memorializing her efforts to have the wild bird ordinance amended. According to LSU, these communications are not subject to the Public Records Law because (1) the records are not in LSU's custody or possession; and (2) Dr. Lattin's efforts to amend the ordinance were not done at the behest of LSU, but on her own initiative.

As to LSU's contention that public records not in its physical possession are not subject to production under the Public Records Law, the law is well-settled. Records need not be in the physical possession of a public body in order to fall within the Public Records Act. **Kyle v. Perrilloux**, 02-1816, p. 8 (La.App. 1 Cir. 11/7/03), 868 So.2d 27, 31 ("[P]hysical possession is not synonymous with 'custody or

25

control.'"). Under La. R.S. 44:1(A)(3), a "custodian" is defined as "the public official ... having custody *or* control of a public record." (Emphasis added.) As this court has noted, "if the legislature had intended to restrict the public's right of access to public documents only through a public official who had both custody *and* control, the legislature would have so stated." **Shane**, 14-2225 at 26, 209 So.3d at 745 n.15.

Further, and equally well-settled, is the proposition that responsive records remain subject to the Public Records Law even if located on private devices or in private accounts. **Brumfield v. Village of Tangipahoa**, 21-0082, p. 10 (La.App. 1 Cir. 12/20/21), 340 So.3d 221, 230 (a text message is included in the definition of a public record if that text message is used in the performance of any work, duty, or function of a public body, under the authority of state or local law); **Mercato Elisio, L.L.C. v. City of New Orleans**, 18-0081 p. 10 (La.App. 4 Cir. 11/21/18), 259 So.3d 1235, 1242 (email sent from private email account of member of public body constituted a public record where the email "was prepared, used, and possessed in accordance with" member's work with public body); La. Att'y Gen. Op. No. 21-0081 (October 14, 2021) (any record meeting the statutory definition of a public record, and not subject to any recognized exception, exemption, or limitation, including records created or sent utilizing personal email accounts, may be subject to production under the Public Records Law). If such were not the case, a public official could evade the Public Records Law simply by communicating about sensitive public matters through a personal device and routinely escape public scrutiny. **Brumfield**, 21-0082 at 10, 340 So.3d at 230.

As the lower courts correctly recognized, the dispositive inquiry with respect to Dr. Lattin's efforts to amend the wild bird ordinance is whether her communications (including the hiring of private counsel) were used "in the conduct,

26

transaction, or performance of any business, transaction, work, duty, or function" of a public body, under the authority of state or local law. La. R.S. 44:1(A)(2)(a). In this regard, the evidence establishes that at a meeting attended by Dr. Stout, Dr. Lattin and other LSU representatives, a representative from East Baton Rouge Parish animal control advised LSU that Dr. Lattin's trapping activities violated the City of Baton Rouge's wild bird ordinance. Following that meeting, Dr. Lattin conversed with others at LSU about whether it might be possible to amend the ordinance. She then met with a private attorney. While Dr. Lattin testified that LSU was not involved in her efforts, and she did not work to amend the ordinance at LSU's behest, she acknowledged that she works for and draws a salary from LSU and that her laboratory is at LSU. In addition, LSU students participate in her research and the birds used by her laboratory are housed in a LSU vivarium within the city limits of Baton Rouge. The staff that cares for the birds is paid by LSU. Finally, Dr. Lattin testified that the animal research she performs at LSU must "apply and abide by local, state and federal regulations."

Given the foregoing testimony, this court is in agreement with the lower courts' factual determination that the amendment allowing an exception to the bird sanctuary ordinance that then permitted Dr. Lattin to trap birds within the geographic location of the city where her employer, laboratory, and the enclosure housing the birds with which she experiments is located relates to the work, duty, or function of LSU[9] and that records relating to the effort to effect that amendment are thus public records. Under these facts, the lower courts did not err in ordering LSU to produce the records of the amendment to the City of Baton Rouge's wild bird ordinance.

---

[9] In fact, Dr. Lattin's efforts to amend the ordinance had the effect of legalizing the work being performed at LSU.

## CONCLUSION

Under the Louisiana constitution and the Public Records law, the public is guaranteed access to public records unless a law specifically and unequivocally provides otherwise. With respect to each of the four categories of records requested by PETA and withheld by LSU, the law and evidence support the conclusion that LSU failed to meet its burden of proving the records were properly withheld. For the reasons recited above, the decision of the court of appeal is affirmed.

**AFFIRMED.**

**PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS**

**VS.**

**BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND THOMAS GALLIGAN, INDIVIDUALLY AND IN HIS CAPACITY OF PRESIDENT OF LOUISIANA STATE UNIVERSITY**

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of East Baton Rouge

**CRAIN, J., dissents in part and assigns reasons.**

This case arises out of several public records requests related to an ongoing research project conducted by a professor at LSU, Dr. Lattin. Research and development at flagship institutions in our state is of paramount importance to advance scientific endeavors and to foster the receipt of grants and funding. Legislative action evidences the need to protect information produced or collected in the course of academic research projects to achieve those goals. *See* La. R.S. 44:4(16)(b) (protecting from disclosure data of state institutions of higher learning that are patentable or licensable). Granting unlimited or untimely access to such research can have a chilling effect on both the research and the recruitment of qualified scholars and the funding that follows them. Conversely, but most important, is giving effect to the constitutional right to access public documents. *See* Louisiana Const. art. XII, § 3. We must closely scrutinize each request.

*Animal Use / Veterinary Care Records*

The majority finds the veterinary care records are public records under our Public Records Law, La. R.S. 4:1(A)(2)(a). LSU contends that because these records are generated and maintained as a result of federal law and regulations, they are not public records under state law. I agree.

The veterinary care records on these particular birds in this particular lab are kept because LSU must comply with federal law. State law is not the root of maintaining these records. Rather, the records prove compliance during bi-annual federal inspections. Record-keeping is a method LSU has chosen to prove compliance with federal law and regulations. Whether the IACUC either requires or ever checks the records is immaterial. They are kept to show compliance with the minimum standards of federal law, the Animal Welfare Act. Compliance assures continued funding; proof establishes compliance. LSU's choice of the form of proof does not transform these records into state veterinary care records. I find the veterinary care records are not subject to public disclosure.

*Video Recordings*

I agree with the majority's analysis and conclusion regarding the requested video recordings. While I am mindful of LSU's contention that the finished product may be compromised if protection is not afforded to *ongoing* research, the statute must be read as written and no such exception is expressed. To the extent this information has been made public before research is finalized and its premature disclosure could negatively impact the project, the funding, and the school's competitive advantage, it is incumbent upon the legislature to address it.

*Records Relating to Amendment of an Ordinance*

The majority found records pertaining to the amendment of the City of Baton Rouge's wild bird ordinance and to the hiring of private counsel were subject to the Public Records Law. I find this to be a personal pursuit of Dr. Lattin. I agree public information cannot be protected from disclosure simply by using private means. But, likewise, private information is not made public simply because it is held on a public electronic device. Dr. Lattin's efforts to amend the wild bird ordinance were pursued individually, not on behalf of LSU. Her status as an employee of LSU alone does not convert her private communications into a matter for public disclosure. The

2

information sought involves Dr. Lattin's personal interests, which secondarily affect LSU. Because her personal privacy is predominant, I would protect the communications relative to the ordinance and the retention of private counsel.

For these reasons, I dissent in part.

# SUPREME COURT OF LOUISIANA

## No. 2023-C-01396

## PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS

## VS.

## BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND THOMAS GALLIGAN, INDIVIDUALLY AND IN HIS CAPACITY OF PRESIDENT OF LOUISIANA STATE UNIVERSITY

*On Writ of Certiorari to the Court of Appeal, First Circuit,
Parish of East Baton Rouge*

**GRIFFIN, J., additionally concurs and assigns reasons.**

I share Justice Crain's policy concerns over the potential chilling effect on research and recruitment at our state's universities. However, I agree with the thorough analysis of the law and facts articulated in the majority opinion. It is incumbent on the legislature to evaluate the policy ramifications and amend the relevant statutes if necessary.